# CHARLESTON.

## MILLER v. COAL CO.

Submitted September 10, 1888.—Decided December 8, 1888.

1. CORPORATIONS—TORT COMMITTED AFTER EXPIRATION OF CHARTER.
    A private business corporation, duly chartered and organized
    under the laws of this State, which failed to wind up its business
    when the time fixed by its charter for its duration expired, but
    continued thereafter in its charter name to carry on its corporate
    business, may be sued in a court of law in its corporate name for
    a tort committed by it after its charter had expired.

2. CORPORATIONS—COMMON-LAW PLEADING.
    In such case a plea that the charter of the corporation had ex-
    pired, and that it had ceased to exist in law at the time the alleged
    cause of action arose, will be held bad, because it does not also aver
    that the corporation had wound up its business, and ceased to exist
    in fact as well as in law.

*S. P. McCormick* and *P. J. Crogan* for plaintiff in error.

*J. W. Mason* for defendant in error.

SNYDER, JUDGE:

Action of trespass on the case, commenced December 29,
1886, in the Circuit Court of Preston county, by Elizabeth
A. Miller, administratrix of Daniel Miller, deceased, against
the Newburg Orrel Coal Company to recover damages under
our statute from the defendant for its negligence resulting
in an explosion in its coal-mine, whereby the plaintiff's in-
testate, an employee of the defendant, was killed.

The declaration avers that the defendant is an incorpo-
rated company, and the action is against it as such. The de-
fendant filed a plea alleging that it was organized and be-
came a body corporate on June 15, 1855, by virtue of an act
of the general assembly of Virginia for the purpose of min-
ing coal in Preston county and so continued for the period
of twenty years or until June 15, 1875, when its charter ex-
pired, and all rights powers, and ability to create liabilities
as such corporation ceased and determined ; and that all its
property and assets by operation of law passed into the

hands of C. Oliver O'Donnel, Robert T. Baldwin, Alford Jenkins, John Stewart and Otho H. Williams, who composed the board of directors of the corporation then in office; and that at the time of committing the wrongs complained of in the plaintiff's declaration its power and ability to create any liability had ceased *etc.*

To this plea the plaintiff demurred, and also tendered a special replication in which she averred, that on June 15, 1875, and ever since that time the defendant continued to act and operate its coal-mine as such corporation; that it was so acting at the time of the injury complained of and is still so acting and holding itself out to the public; and that in fact it has never ceased its corporate business or parted with its property or closed up its affairs *etc.* This replication was, on the motion of the defendant, rejected, and the plaintiff excepted. The order then concludes as follows:

"And the court being of opinion that the said plea is sufficient in law, doth therefore consider that the demurrer be overruled; and the plaintiff not desiring to reply further, it is accordingly considered by the court that the plaintiff's writ be quashed, and that defendant recover from the plaintiff its costs.'"

To this judgment the plaintiff obtained this writ of error.

This judgment is peculiar, because the overruling of the demurrer to the plea did not dispose of the questions of fact presented by the plea as well as the declaration. It may, however, be considered that the plaintiff by declining to further reply to the plea, by general replication thereto or otherwise, abandoned his action, and thereby authorized its dismissal. As no question has been raised to this seeming irregularity, by any party, either in the assignment of error or the argument, we do not deem it necessary to do more than refer to it, for the reason that the judgment must be reversed upon another ground.

The important question to be determined in this case is, whether or not a duly incorporated and organized corporation, which continues its corporate business in its corporate name after the time fixed by its charter for its duration has expired, can be sued and made liable as a corporation *de facto* for a tort committed by it after the limit fixed by its charter had ex-

pired. At common law, upon the death or dissolution of a corporation its real estate reverted to the grantors or donors, and its personal property escheated to the king, while the debts due to and from it were thereby extinguished, and all actions pending for or against it at the time abated. *Rider* v. *Factory*, 7 Leigh 154; *Board* v. *Livesay*, 6 W. Va. 44; *Mumma* v. *Potomac Co.*, 8 Pet. 281. But this doctrine had its origin when corporations were either municipal or ecclesiastical, and private business and commercial corporations were unknown.

Upon the dissolution of these old public corporations their real estate, which was usually acquired as a donation to public or pious uses, was held to revert, upon the cessation of the use to the donors, and their personal property to escheat to the king, for the want of owners. In these cases there were no stockholders or natural persons who were entitled, equitably or otherwise, to the assets of the deceased coporation, and as in the case of an individual dying without heirs, the personalty went to the king, but, to prevent the realty from escheating to the king, it was held to revert to the donor upon the theory that the grant, being made to corporation for a public or charitable use, was made only for its life. But this rule, so far as modern business and commercial corporations are concerned, has become practically obsolete. Its unjust operation upon the rights of creditors and stockholders has been generally prevented by statute, and in equity the assets of such a corporation, which represent, not the donations of the prince or its pious founder, but the contributions of its stockholders, are held, independent of statute, to constitute a trust-fund, into whosoever hands they may come, for the benefit of the creditors and stockholders. *Curran* v. *Arkansas*, 15 How. 304; *Bacon* v. *Robertson*, 18 How. 480.

Very soon after *Rider* v. *Factory*, *supra*, was decided, and, according to a suggestion of the court in that case, the general assembly of Virginia, at its session of 1836–37, passed an act, which has ever since been in force. This statute, without material change, was incorprated in our Code of 1868, and has continued to be, and still is, in force in this State. It provides, in substance, that when a corporation shall expire

or be dissolved, its property and assets shall, under the direc-tion of the board of directors then in office, or such receiver as may be appointed by the Circuit Court, be subject to the payment of its liabilities, and the surplus, if any, shall be distributed among its stockholders. "And suits may be brought, continued, or defended; the property, real or personal, of the corporation be conveyed or transferred, under the common seal or otherwise; and all lawful acts be done, in the corporate name, in like manner, and with like effect, as before such dissolution or expiration; but so far only as shall be necessary or proper for collecting the debts and claims due to the corporation, converting its property and assets into money, prosecuting and protecting its rights, enforcing its liabilities, and paying over and distributing its property and assets, or the proceeds thereof, to those entitled thereto." Code, ch. 53, § 59.

It is no doubt true, that the Legislature, in passing this statute, had special reference to winding up the affairs of defunct corporations, and disposing of their assets to those entitled thereto by proceedings in equity, and thus to destroy the common-law rule, which was regarded as unjust and inapplicable to modern private business corporations. But the terms employed in the statute do not confine its operation to equity proceedings. It provides in general terms, that suits may be brought or defended in the corporate name with like effect as before the dissolution, so far as shall be necessary for collecting the debts and enforcing the liabilities of the corporation. This language is certainly sufficiently comprehensive to embrace any suit, whether in law or in equity, which may be proper for collecting the debts due to, or enforcing the liabilities against, the corporation; and this seems also to give effect to the general object and purpose of the statute. It was evidently intended to be for the benefit of the creditors of the corporation as well as for the stockholders and the corporation itself. If either had a cause of action, which could according to law and its rules of practice be enforced only in a court of law, the purpose of this statute was manifestly to permit the bringing suit upon it in a court of law, for otherwise the general object of the statute could not be attained.

In respect to the Newburg Orrel Coal Company,—the corporation now in question,—there can be no doubt, that it was the duty of the directors under the provisions of this statute, to wind up its business, when its charter expired; but the facts show, that they did not do so. On the contrary the corporation continued to prosecute its business in its corporate name, just as it had done before its charter expired. It continued to exist as a matter of fact, after its franchise or legal right to exist had expired. It thus became a corporation *de facto* but not *de jure*. As such *de facto* corporation it certainly possessed no special powers such as the power to condemn property and other like powers, which the law confers only upon corporations existing by legal right. But the courts cannot reasonably ignore the existence of such a corporation, if it is an immutable fact; nor are the acts and dealings had by and with it necessarily legally ineffective and of no binding force. 2 Mor. Priv. Corp. §§ 1002, 1003; *Gas-Light Co.* v. *City of St. Louis*, 11 Mo. App. 55; *Briggs* v. *Canal Co.*, 137 Mass. 71.

The scope of the powers of the officers and agents of a corporation *de facto* must be fixed in the same manner as in case of a corporation *de jure*. Therefore, if an association assumes to carry on business or enter into contracts in a corporate capacity under an expired charter, and those dealing with it treat it as if it were a corporation, the individual members of such association cannot be made liable either severally or jointly or as partners. This is equally true whether the association was in fact a corporation or not, or whether the dealing with the association in its corporate capacity was authorized by the legislature, or prohibited by law and illegal. If an association assumes a liability, or enters into a contract as a corporation, it is clear the members of the association do not agree to be bound as individuals either jointly or severally; nor do they agree to be bound as partners to each other or to those dealing with the association. It is equally true that the parties dealing or contracting with them do not intend to bind them individually. To treat the individuals as parties to such transaction would, therefore, involve not only the nullification of the act which was actually contemplated by the parties on both sides but

the creation of a different obligation, which neither of the parties intended to make. 2 Mor. Priv. Corp. § 748.

It is a general rule that a party who has contracted with an association assuming to be a corporation, and acting in a corporate capacity, cannot, after having received the benefit of the contract, set up as a defence to an action brought upon it by the corporation that the latter was not a legal corporation, or had no authority to make the contract in a corporate capacity. *Brouwer* v. *Appleby*, 1 Sandf. 158. This rule does not rest upon the doctrine of estoppel, as has sometimes been said, but is founded upon the policy of the common-law prohibition against unauthorized corporate action. *Bradley* v. *Ballard*, 55 Ill. 413; *City of St. Louis* v. *Gas Co.*, 70 Mo. 69. The same rule is applicable in a suit brought against a corporation upon a contract, which has been performed by the other party A company, which has entered into a contract in a corporate capacity, cannot, after the contract has been performed by the other party, set up as a defense to an action for damages, that it was not a *de jure* corporation, *Dooley* v. *Giass Co.*, 15 Gray 494; *Manufacturing Co.* v. *Stuart*, 46 Mich. 482, (9 N. W. Rep. 527). The same rule applies in suits upon other classes of liabilities by or against *de facto* corporations. *Imboden* v. *Mining Co.*, 70 Ga. 86; 2 Mor. Priv. Corp. §§ 751, 755; *Manufacturing Co.* v. *Bennett*, 28 W. Va. 16.

The principles, it seems to me, to be deduced from our statute and these authorities is, that a private business corporation acting and carrying on its corporate business in its corporate name, after its legal existence has ended by the expiration of its charter, must be held to be a corporation *de facto ;* and that as such, so long as it in fact so carries on its business and contracts or incurs liabilities with or to third persons dealing with it as such *de facto* corporation, it may sue and be sued at law either in actions *ex contractu* or *ex delicto*, and it cannot defeat such action by alleging that its charter had expired, before the cause of action arose. Its directors and stockholders by failing to wind up its business, when the charter expires, as it is their duty to do under our statute, cannot relieve the corporation from liability for acts done in its name and during its actual existence as a *de facto*

corporation. In order to relieve it from liability the corporation must have ceased to exist both in law and in fact. And consequently, when it is sued as a corporation, a plea averring simply, that it has ceased to exist in law or as a legal corporation, will be insufficient, but it must aver also, that it had ceased to exist in fact, at the time the alleged cause of action arose.

It follows from these principles and this conclusion, that the plaintiff in this case had the right to sue the defendant as a corporation ; and that the plea of the defendant was bad, because it failed to aver in addition to the facts, that its charter had expired, and that it had ceased to be a corporation in law, the further fact that it had wound up its business and had ceased to exist in fact, at the time the alleged cause of action arose. The Circuit Court therefore erred in overruling the demurrer to the defendant's plea and in giving judgment for the defendant. For this reason the judgment of the Circuit Court must be reversed, the plaintiff's demurrer to said plea sustained, and the case remanded to said Court for further proceedings.

Reversed. Remanded.