[Civ. No. 1379.   Third Appellate District.—August 18, 1915.]

## FIRST NATIONAL BANK OF KANSAS CITY, Appellant, v. AUGUST PENNIG et al., Respondents.

NATIONAL BANK—EXPIRATION OF TERM OF CORPORATE EXISTENCE—RIGHT TO MAINTAIN ACTION ON PROMISSORY NOTE.—A national bank whose corporate existence has expired by lapse of time may nevertheless maintain an action on a promissory note held by it, where it appears from the evidence that the plaintiff was carrying on its business as such a bank when the note was received and when the action was commenced and for fourteen years prior thereto,

ID.—ACTION UPON ASSIGNED NOTE—TAKING OF BEFORE MATURITY AND
WITHOUT NOTICE OF DEFENSE—SUFFICIENCY OF EVIDENCE.—In this
action to recover on a promissory note transferred to the bank as
collateral security for the payment of a certain other note given by
the transferers to the bank for a loan of money, it is held that
the evidence shows without conflict that the plaintiff took the note
before maturity and without notice of the maker's defense thereto,—
an alleged breach of warranty as to the breeding capacity of a
stallion for whose purchase price the note in question was given.

ID.—NEGOTIABLE INSTRUMENTS—INDORSEMENT WITHOUT DATE—PRE-
SUMPTION.—An instrument passing by delivery will be presumed
to have come into the possession of the holder before maturity;
and if an indorsement bears no date, the presumption is that it was
made before the maturity of the instrument.

ID.—EVIDENCE—GOOD FAITH OF BANK.—The good faith of the plaintiff
in the taking of such a note cannot be impeached by evidence that
it had brought suit on other notes in which a similar defense was
made.

APPEAL from a judgment of the Superior Court of Lassen
County: H. D. Burroughs, Judge.

The facts are stated in the opinion of the court.

Pardee & Pardee, for Appellant.

R. M. Rankin, and Grover C. Julian, for Respondents.

CHIPMAN, P. J.—Plaintiff brings the action on a promis-
sory note, dated December 1, 1909, for the sum of one thou-
sand one hundred dollars, due three years after date, payable
to the order of McLaughlin Bros. at the Lassen County Bank,
Susanville, California, with interest at six per cent, signed
by all the defendants. It is alleged in the complaint that, "on
or about February 12, 1912, and long prior to the maturity
of said note, in the ordinary course of business, and for a
valuable consideration, said McLaughlin Bros. assigned and
transferred said note, then held and owned by them, to plain-
tiff, as collateral security for a certain note on said day
given by said McLaughlin Bros. to plaintiff, and plaintiff
thereupon became, ever since has been and now is the lawful
owner and holder of said promissory note so assigned and
transferred to it by said McLaughlin Bros." It is further
alleged that, upon the maturity of said note, to wit, on the

second day of December, 1912, plaintiff caused said note to be presented at said Bank of Lassen County and demanded payment and payment was refused, whereupon plaintiff caused said note to be protested; that no part of said note has been paid except the sum of seventy-five dollars; ''that the promissory note given by said McLaughlin Bros. to plaintiff, and for which the note herein sued upon was given as collateral security, has not been paid and there is a balance due thereon greatly in excess of the full amount now due on the note given by defendants to McLaughlin Bros.''

The answer denies specifically the averments of the complaint, including a denial that plaintiff is a banking corporation organized under the National Bank Act of the United States or otherwise, but admits the execution of the note sued upon.

As a special defense the answer alleges: ''1. That the promissory note mentioned in plaintiff's amended complaint was given by defendants solely for and on account of one Percheron stallion 'Etraegent,' sold and delivered to the said defendants by said McLaughlin Bros., and without any other consideration therefor.

''2. That said stallion was purchased by the defendants, as said McLaughlin Bros. then well knew, for breeding purposes, and the said McLaughlin Bros., as part of the contract of sale and consideration of said note warranted and represented that said stallion was fit and proper and suitable for such purpose, and as a part of such contract and purchase said McLaughlin Bros. guaranteed and represented to defendants that if the said stallion did not get 75 per cent of the mares bred to him with foal they would replace him with another stallion of the same breed and price upon return of said stallion to the seller thereof.''

Facts showing a failure of consideration and a breach of warranty are then set forth quite fully.

The cause was tried by a jury and defendants had the verdict. Judgment passed thereon in favor of the defendants from which plaintiff appeals.

In support of the verdict, defendants make the following points: 1. That plaintiff has failed to prove its alleged corporate existence; 2. That it has failed to prove that it received the note in suit before maturity; and, 3. That the indebtedness for which the note was alleged to have been given

as collateral security was fully paid before the note in suit matured.

1. It appeared that plaintiff was, on February 26, 1886, duly authorized, under section 5169 of the Revised Statutes of the United States, [5 Fed. Stats. Ann. 116, U. S. Comp. Stats. 1913, sec. 9711], to commence the business of banking. It is claimed by defendants that under the law unless its term of existence was extended it would cease to exist in twenty years, or on February 24, 1906. Plaintiff replies by citing section 7 of the act of Congress of July 12, 1882, [5 Fed. Stats. Ann. 92, U. S. Comp. Stats. 1913, sec. 9671], which provides that where national banking associations whose corporate existence has expired and which do not avail themselves of the act "shall be required to comply with the provisions of sections 5221 and 5222 of the Revised Statutes in the same manner as if the shareholders had voted to go into liquidation as provided in section 5220 of the Revised Statutes; and the provisions of sections 5224 and 5225 of the Revised Statutes shall be applicable to such associations, except as modified by this act, and the franchise of such association is hereby extended for the sole purpose of liquidating their affairs until such affairs are finally closed."

It appeared from the testimony of the president of plaintiff bank and by the testimony of the principal teller that both of them had been serving the bank in their several capacities for over fourteen years, which would reach back several years prior to 1906. There was evidence that plaintiff was carrying on its business as a national bank when the transaction occurred and when the action was commenced and for fourteen years prior thereto. It was a *de facto* corporation if not a corporation *de jure* and as such could maintain the action. (*Lakeside Ditch Co.* v. *Crane,* 80 Cal. 185, [22 Pac. 76] ; *Oroville & V. R. R.* v. *Plumas Co.,* 37 Cal. 361; *Miller* v. *Coal Co.,* 31 W. Va. 836, [13 Am. St. Rep. 903, 8 S. E. 600].) The rule has been stated that "a debtor of a corporation cannot avoid his liability to the corporation on the ground that the corporation has forfeited its charter, if there has been no adjudication of such forfeiture." (*Jones* v. *Bank of Tennessee,* 8 B. Mon. (Ky.) 122, [46 Am. Dec. 542].)

2. Did the evidence show that the note in question was assigned to plaintiff before maturity and without notice of the alleged defense?

The testimony of witness Edward F. Swinney, president of the plaintiff bank, was taken by deposition at Kansas City. He testified: "I can identify the paper (the note in question) which I now have, it being a note we took as collateral with a number of other notes for a loan made to McLaughlin Bros., on February 20, 1912, for $50,000.00. That note matured on June 19, 1912. On June 24, 1912, we renewed the note to mature October 17, 1912. On October 17, 1912, we took a demand note for same and still hold that note with payments made on same reducing it to $30,000, which is still unpaid, and we hold this note, with others as collateral to the note of McLaughlin Bros. Q. The note in suit is held as collateral to McLaughlin Bros.' note upon which there remains a balance of $30,000? A. Yes, sir. The interest has been paid." The note sued upon was then attached to the deposition and was indorsed as follows: "McLaughlin Bros. Rec'd of W. F. Spalding this 11th day of Dec. 1909, Seventy-five dollars ($75.00) on the within note." No other indorsement appeared on the note.

The demand note of October 17, 1912, referred to by the witness, was received in evidence. Indorsements showed payments at different times on the principal aggregating twenty thousand dollars. Witness continuing: "The note of August Pennig and others has not been paid. . . . There is about $1,209.50 due thereon, figuring interest to date of maturity. At the time we acquired this note neither I nor any other officer of the First National Bank had any notice of any defenses between the makers of the note and McLaughlin Bros. . . . These credits made on the McLaughlin note were received from collections on collateral notes we held. That is the reduction of the note from $50,000.00 to $30,000.00; that is from collateral which was put up at the time this note was put up." He testified, on cross-examination: "McLaughlin Bros. failed some years ago, I don't know the exact date; they were engaged in importing Percheron horses; our bank had been discounting or collaterizing notes that had been taken by McLaughlin Bros., for eight or ten years, and all that time I knew for what these notes were taken, that they were taken as part of the purchase price of horses sold by McLaughlin Bros. In some cases I know that defenses made were want of consideration by reason of the failure of the horse to come up to warranty. Q. You knew that when you

took this note as part of the collateral for the note of Mc-Laughlin Bros.? A. Yes, and I will say that perhaps the list of collateral taken at that time, there were sixty or seventy notes, and my recollection is there were only four cases in which the consideration is disputed. I do not know personally in any case from what the defense arose. . . . In this list of notes I think four or five have been sued on, but I cannot say which ones. . . . We have done nothing toward taking the title of the note sued upon except to take it as collateral with McLaughlin Bros.' indorsement thereon; we hold it as collateral under our collateral note which you have before you.'' He was asked if all these notes were given as collateral for this thirty thousand dollars, and answered: ''This seems to be the full list which we had; they owed us another note for $30,000.00 at the same time.'' He stated that the aggregate of these notes—the $50,000.00 note of October 17, 1912, and the note for $30,000.00—was $80,179.31; that the other $30,000.00 has been paid.

Witness Sidney Silverman deposed: ''I am discount teller for the First National Bank of Kansas City, Missouri. I have seen the note of August Pennig et al., offered in evidence in connection with the deposition of Mr. Swinney, and can identify it as the note sued on in this case. Mr. Swinney represented the bank in that transaction when the note was taken. . . . After the arrangements were made, Mr. William Mc-Laughlin was referred to the discount department and I made the loan and took the collateral. I am the chief man in that department. Q. You made a record of that transaction on the books of the bank? A. The record was made. I caused it to be made under my supervision. The note marked exhibit 'A' (the note in suit) which was given as collateral for exhibit 'B' (the $50,000.00 note) is still held by the First National Bank and remains unpaid.'' On cross-examination he was asked if in his dealing with McLaughlin Bros. it had not frequently come to the knowledge of the officers of the bank that notes were being contested for want of consideration. ''A. I should not say that occurred frequently. In fact, I would say to the contrary. I would say it did not occur over once or twice, perhaps three times prior to the taking of this note. . . . I should say not over half a dozen of the notes taken by the bank from McLaughlin Bros. have been sued upon. We have no record of the notes sued upon.

We merely give our depositions and leave the matter to our attorneys. I believe in some cases in which our depositions were taken there was a cross-examination. . . . All I would know about these cases would be the transactions between the bank and McLaughlin Bros., that the bank was a *bona fide* purchaser and the notes were taken for a consideration. . . . Q. In any of the cases, that was all there was to it, just the transaction between McLaughlin Bros. and the bank? A. I cannot see how it would relate to any other transaction except between the bank and the McLaughlin Brothers. Q. Well, that is what I am getting at. I want to see if you know of any other facts except as to the discounting and purchase of the notes. A. I knew we took this note as collateral. Q. Was there anything connected with the making of these notes, or anything connected with the notes in any shape or form, except the transaction between McLaughlin Bros. and the bank that you know about? A. My entire information would be based on that fact." Continuing the witness testified: "We have several collateral accounts; the only collateral account that I have reference to in this transaction is the McLaughlin Bros.' account and no funds except proceeds of collections on these McLaughlin Bros.' notes go into this account. There has been no sale, either public or private, of the collateral named in exhibit 'B.' The bank is depending entirely upon the payment of exhibit 'A' to reduce the debt of McLaughlin Bros." On re-direct he testified: "I had no notice when we took this particular note that there was a claim on the part of the makers of failure of consideration, or that the horse was not up to warranty, or of any other consideration; if I had of had any such notice, I would have objected to taking it."

Plaintiff introduced the evidence of the protest of the note sued upon, from which it appears that it was protested on December 2, 1912, at the request of the Bank of Lassen County. No point is made as to the sufficiency of this protest. The foregoing is the evidence in support of the complaint.

Defendant's evidence related exclusively to the special defense that the horse failed to measure up to the warranty and we think was sufficient to justify the verdict on that issue. If, however, the evidence showed without conflict that plaintiff took the note as collateral security, before maturity

28 Cal. App.—18

and without notice of defendants' defenses, the failure of the horse in the respects complained of becomes immaterial and the judgment on the verdict cannot be sustained. "An indorsee in due course is one who, in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer." (Civ. Code, sec. 3123.) The indorsement here was general and the evidence as to how and when the note was acquired by plaintiff is not contradicted by any evidence.

In volume 3, Ruling Case Law, page 1049, the rule is stated as follows: "An instrument passing by delivery will be presumed to have come into the possession of the holder before maturity. And if an indorsement bears no date the presumption is that it was made before the maturity of the instrument." Many cases are cited in support of the rule. In *San Antonio* v. *Mehaffy,* 96 U. S. 312, [24 L. Ed. 817] it was said: "The holder of commercial paper, in the absence of proof to the contrary, is presumed to have taken it underdue, for a valuable consideration and without notice of any objection to which it was liable." In *Mobley* v. *Ryan,* 14 Ill. 51, [56 Am. Dec. 489] it was said: "Where an indorsement is without date, the presumption of law is, that it was made before the note became due. If the time of the indorsement becomes material for the purpose of defense, it is incumbent on the maker to show that it was made after maturity of the instrument, and thereby destroy the legal presumption." Plaintiff could have relied upon this presumption. But it submitted evidence which, fairly interpreted, strengthened the presumption. It certainly did not overcome it or cast doubt upon it. Defendants refer to the fact that the protest was made at the request of the Bank of Lassen County and that no evidence connects plaintiff with that bank or explains how the note happened to be protested at the request of the Bank of Lassen County. Plaintiff was shown to be the owner and holder of the note, before maturity and subsequently; the note was payable at Bank of Lassen County and was, we may presume, sent by the plaintiff to that bank for presentment. Ordinarily, presentment would not be necessary to charge the maker, but where the note by its terms is payable at a specified time and place and the maker is will-

ing and able to pay at maturity, such ability and willingness are deemed equivalent to an offer of payment upon his part. (Civ. Code, sec. 3130.) It was the duty of the holder to present the note at maturity where the maker had agreed it should be paid to give the latter the opportunity to pay and overcome the "equivalent to an offer of payment on his part." (Civ. Code, sec. 3130.) Besides, to charge the indorser in case of dishonor, such presentment and notice thereof were necessary. (Civ. Code, sec. 3116.) There is not the slightest evidence that the Bank of Lassen County ever had any interest in the note which was in fact owned by plaintiff, a corporation doing business in a distant state.

The cross-examination of Swinney and Silverton is set forth herein because it was conducted apparently to show that they had sufficient knowledge of the consideration of these collateral notes transferred to plaintiff by McLaughlin Bros., and the defenses set up to them by purchasers of horses from McLaughlin Bros., to justify the inference that they either knew of the infirmity of the note in question or were put upon inquiry as to the defenses that might be made. The good faith of plaintiff in its purchase of this note cannot be impeached by evidence that it had brought suit on other notes in which a defense similar to that here interposed was made. In *Citizens' Trust & Savings Bank* v. *Stackhouse,* 91 S. C. 455, 40 L. R. A. (N. S.) 454, [74 S. E. 977], the action was upon a promissory note assigned to plaintiff by the same McLaughlin Bros. and a similar defense to the one here was there made. Among other things, the court said: "Certainly the mere fact that plaintiff had litigation in collecting some twenty, or probably forty, of the many notes which it had discounted in the run of seventeen years' business with the McLaughlin Bros. as its depositors does not tend to show bad faith in discounting the note here sued on." The supreme court had occasion, in *Sinkler* v. *Siljan,* 136 Cal. 360, [68 Pac. 1024], to consider the same principle and it was there said: "The circumstances attending the purchase must be something more than such as to invite inquiry on the part of the purchaser; they must, as was said in *Eames* v. *Crosier,* 101 Cal. 260, [35 Pac. 873], show that the note was taken by plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, otherwise the burden is upon the defendant to show that plaintiff took the instrument with notice of the

defendant's equities.'' See *Meyer* v. *Lovdal,* 6   Cal. App. 376, [92 Pac. 322]. What adverse effect the evidence referred to had upon the minds of the jury can only be conjectured. But if it had such effect it was to plaintiff's prejudice and unwarranted.

3. We are. unable to discover any evidence upon which defendants' claim can rest that the indebtedness for which the note in question was held as collateral had been fully paid before the commencement of the action or at the time of the trial. The testimony of the officers of the bank, we think, made it quite clear that the collateral was given to secure the McLaughlin Bros.' note for fifty thousand dollars and had no connection with the other of their indebtedness to plaintiff of thirty thousand dollars which had been paid.

The judgment is reversed.

Ellison, J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 15, 1915.