[L. A. No. 6816. In Bank.—August 1, 1922.]

# C. E. VAN LANDINGHAM, Appellant, v. UNITED TUNA PACKERS (a Corporation), Respondent.

[1] CORPORATIONS—FORFEITURE OF CHARTER—SUBSEQUENT ACTS AND CONTRACTS.—A *de jure* corporation whose charter has been forfeited for failure to pay its license tax and whose powers and functions have been suspended under either the act of 1915 (Stats. 1915, p. 422), or the act of 1917 amending and reframing the former act (Stats. 1917, p. 371), or under both of such acts, does not continue to function as a *de facto* corporation, so as to give validity to its acts and contracts entered into during the period of its forfeited charter and suspended powers.

[2] ID.—DE FACTO CORPORATIONS—COLLATERAL ATTACK—APPLICABILITY OF CODE INHIBITION.—Section 358 of the Civil Code providing that the due incorporation of any company or its right to exercise corporate powers shall not be inquired into collaterally in any private suit to which such *de facto* corporation may be a party, has application only to such corporations as are not forbidden by positive law to do business as *de facto* corporations and cannot be given application to the attempted acts of corporations whose charters have been forfeited and whose acts thereafter have been expressly made unlawful by the terms of the statute declaring such forfeiture.

[3] ID.—ESTOPPEL—INAPPLICABILITY OF DOCTRINE.—In an action to recover damages for breach of a contract by a corporation which was entered into during the period of its forfeited charter and suspended powers, there is no basis for the application of the equitable doctrine of estoppel, where, while the facts in relation to the forfeiture of the corporate charter were actually unknown to all the parties concerned, the means of knowledge thereof were equally available to all, and it further appears that the plaintiff did not expend any money or services or change his situation in any respect in reliance upon the contract, and that the defendant has not received and retained any benefit accruing therefrom. (Opinion on denial of rehearing.)

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

189 Cal.—23

Gibson, Dunn & Crutcher and Norman S. Sterry for Appellant.

P. B. D'Orr and A. L. Abrahams for Respondent.

RICHARDS, J., *pro tem.*—This is an action to recover damages for the breach of a contract alleged to have been entered into between the plaintiff and the defendant on the seventh day of March, 1918, by the terms of which the defendant agreed to employ the plaintiff to act as its exclusive agent or broker in the sale of its entire pack of canned fish and fish products during the term of five years from April 1, 1918, and up to and including March 31, 1923, and for which the plaintiff was to receive certain stipulated commissions from the net price of the product thus sold. It was alleged that the defendant had refused to perform and had repudiated said contract, to the plaintiff's damage in the sum of $4,000. The defendant, in its answer, denied having entered into or executed any such contract or employed the plaintiff in any capacity whatever or agreed to pay plaintiff any commissions whatever or delivered to the plaintiff for sale, or otherwise, any of its fish product whatever. The answer contains certain other specific denials not material to the inquiry in this case.

Prior to the trial of the action, the parties entered into a stipulation as to the facts of the case, which by agreement was to constitute the findings of fact in the .case, and which was adopted by the court as such, and which stipulation reads as follows:

"1. C. E. Van Landingham is, and at all times mentioned in plaintiff's complaint was, doing business under the fictitious name of C. E. Van Landingham Company, and at all times has complied with all of the provisions of the law with respect to doing business under a fictitious name.

"2. That United Tuna Packers is a corporation duly organized and existing under and by virtue of the laws of the state of California, and that said corporation was duly organized on September 23, 1913, and since said time has been engaged in catching and canning fish and fish products, and owned and operated, and now owns a cannery for that purpose.

"3. That the articles of incorporation and by-laws of said corporation provide, and at all times have provided, that there shall be five directors of said corporation, and that three directors shall constitute a quorum and may act as the board of directors, and that where a vacancy occurs on the board of directors, the remaining directors may elect any duly qualified person to fill said vacancy. That during the year 1917, up to March 3rd, 1917, the directors of the United Tuna Packers were A. D. Pearce, W. Von Bergen, .F. H. Johnson, Bertha V. Johnson and Arthur J. Abbott.

"4. That the annual license tax required under the laws of the state of California was not paid by said United Tuna Packers upon the 1st day of January, 1917, nor paid at all during said year, and at six o'clock p. m. on March 3rd, 1917, said tax became delinquent.

"5. That in the month of April, 1917, the secretary of state of California filed with the county clerk of Los Angeles county a duly certified copy, as required by law, of the record in said secretary's office showing as follows:

"Name of corporation.......United Tuna Packers

"Corporate number ......................74618

"Place of business...................Los Angeles

"Charter forfeited to state, section 10, chapter 190, Statutes 1915, at midnight March 3, 1917.

"6. That prior to May 25th, 1917, the said plaintiff had no connection with, or interest in said defendant, and did not, at any time prior to the alleged execution of the contract herein sued upon, have any knowledge or notice that the corporation had forfeited its charter or franchise, or that the annual license tax required by the laws of the state of California had not been duly paid for the year 1917.

"7. That during the interim between March 3rd, 1917, and March 7th, 1918, meetings of the persons who composed the board of directors on said March 3rd, 1917, and the persons purported to be duly elected as their successors in office as hereinafter recited, were from time to time held, and business was carried on in the name United Tuna Packers in exactly the same manner as though said license tax had been duly paid.

"8. That no new directors were elected, or any of the directors purported to be changed until May 25th, 1917; that on said May 25th, 1917, a meeting was held by said A. D. Pearce, W. Von Bergen, F. H. Johnson, Bertha V.

Johnson, and Arthur J. Abbott, said persons purporting to act as directors of the said defendant. That at said meeting A. D. Pearce tendered his resignation as a director, and his resignation was accepted by the other persons acting as directors, to-wit: W. Von Bergen, F. H. Johnson, Bertha V. Johnson and Arthur J. Abbott; that after the resignation of said A. D. Pearce had been accepted, John Tweeddale was elected as a director by the other persons purporting to act as directors, to-wit: W. Von Bergen, F. H. Johnson, Bertha V. Johnson and Arthur J. Abbott; thereupon the said W. Von Bergen tendered his resignation as a director, and the other persons purporting to act as directors, to-wit: F. H. Johnson, Bertha V. Johnson, Arthur J. Abbott and John Tweeddale, accepted his resignation and elected one Ward as a director in the place and stead of said W. Von Bergen; that thereupon F. H. Johnson tendered his resignation as a director, and the other persons purporting to act as directors, to-wit: Bertha V. Johnson, Arthur J. Abbott, John Tweeddale, and Ward, accepted the resignation of the said F. H. Johnson and elected A. L. Abrahams as a director in the place and stead of said F. H. Johnson; thereafter Bertha V. Johnson and Arthur J. Abbott tendered their resignations as directors; and the three persons then purporting to act as directors, to-wit: John Tweeddale, Ward, and A. L. Abrahams, accepted their resignations but did not attempt to fill the vacancies purported to be thereby created. That the proceedings to elect said John Tweeddale, Ward and A. L. Abrahams, were in all respects due and regular and valid except as the same may have been entirely voided or affected by the fact herein recited of the nonpayment of the license tax and the declaration of the secretary of state declaring the said charter forfeited.

"9. That thereafter meetings of the directors of said United Tuna Packers were held by the said John Tweeddale, Ward and A. L. Abrahams, and business transacted and carried on as hereinbefore recited in paragraph 7.

"10. That on January 29th, 1918, said John Tweeddale, Ward and A. L. Abrahams met, purporting to act as directors of said defendant corporation, and that at said meeting the plaintiff herein, C. E. Van Landingham was elected a director and president of the United Tuna Packers and after the purported election of said C. E. Van Landingham

as a director and president, John Tweeddale tendered his resignation as a director.

"11. That on March 7th, 1918, a meeting was held by said Ward, Abrahams and Van Landingham as directors of said United Tuna Packers, and the said persons purporting to act as said directors elected John W. Austin and John Tweeddale as directors.   Thereafter C. E. Van Landingham and Ward resigned as directors, and the other persons purporting to act as directors, to-wit: said Abrahams, Austin and Tweeddale thereupon accepted their resignations and thereupon elected A. Boyd as a director; and thereafter said Abrahams resigned as a director; and thereupon said Austin, Tweeddale and Boyd elected John Tweeddale as vice president and A. Boyd as secretary.

"12. That prior to the said 7th day of March, 1918, the said plaintiff herein, C. E. Van Landingham had purchased a majority of the capital stock of the said defendant.   That on said 7th day of March, 1918, and prior to the time of his resignation, the said C. E. Van Landingham sold all of his said stock to the said John W. Austin and A. Boyd, and a transfer of the stock was made upon the books of the corporation.   That after the said John W. Austin and A. Boyd had been elected as president and secretary, and on March 7th, 1918, the said contract sued on herein was signed by the plaintiff as party of the second part, and the name of the United Tuna Packers was affixed by John Tweeddale as vice president and by A. Boyd as secretary. That the said persons purporting to act as directors, to-wit: said John W. Austin, John Tweeddale, A. Boyd passed a resolution which was entered upon the minutes of said meeting authorizing the execution of said contract.

"13. The defendant does not stipulate that during the period between March 3rd, 1917, and March 12th, 1918, it was in existence, or that any business could have been, or was, legally conducted by the defendant, or that any of the meetings purported to be meetings of the directors of said corporation as set out in paragraphs 7 to 12 hereof were actually meetings of the directors of said United Tuna Packers, or that defendant was bound by them.   The defendant does stipulate, however, that all of said meetings were duly and regularly called, and that the resignations of the various persons as directors, and the election of the

various persons as directors to fill the vacancies created as set out in paragraphs 7 to 12, were in conformity with the articles of incorporation and by-laws of the defendant, and were in all respects due and regular in form and substance, except as the said meetings and the resignations of purported directors, and election of other purported directors, may have been affected or entirely nullified by the failure to pay said annual license tax as hereinbefore recited, and the action of the secretary of state thereon, the defendant claiming that each and all of the meetings hereinbefore recited were absolutely void and were without legal force or effect, and that during the interval between March 3rd, 1917, and March 12th, 1918, there were no directors of said corporation capable of either resigning or acting at all, and that any purported act of any person in carrying on business for said corporation was without legal force or effect whatever, and that defendant had no legal existence whatsoever during the period from March 3rd, 1917, to March 12th, 1918.

"14. That during the year 1917 the business of the United Tuna Packers was carried on in the name of said United Tuna Packers by its purported officers and directors, elected as officers in the way and manner hereinbefore recited.

"15. That at the time of the execution of the instrument sued on, and claimed by the plaintiff to be a contract, none of the persons executing the same or who were then connected with or had any interest in defendant corporation, had any actual knowledge or notice that the charter of the defendant the United Tuna Packers had been forfeited, or the license tax for 1917 had not been paid, and all the persons then purporting to act as directors of said corporation, and as officers thereof, as well as the said plaintiff herein, acted upon the belief and assumption that the said corporation was lawfully existing and that the persons then purporting to act as its directors were duly, regularly and lawfully acting as its directors. That neither the plaintiff, nor said Ward, A. L. Abrahams, John W. Austin, Samuel D. Weil, John Tweeddale or A. Boyd, on or prior to March 7th, 1918, had any actual knowledge or notice that said license tax for 1917 had not been paid. That since the issuance of the certificate of revivor and the receipt thereof

by the defendant, the said defendant has not recognized in any manner the said contract as its act or deed, nor has it done anything to ratify said contract, and when the plaintiff demanded performance by it of said contract it repudiated the same, and plaintiff does not claim any estoppel against the defendant by reason of any act or thing done by it subsequent to the issuance and receipt of the said certificate of revivor.

"16. That prior to the time the annual license tax due for the year 1918 became delinquent, the said persons acting as directors of said corporation, to-wit: A. L. Abrahams, C. E. Van Landingham and said Ward, caused the full amount of money due for the license tax for the year 1918 to be duly and regularly forwarded to the proper officers of the state of California for the payment of said tax. That after the execution of the said instrument set out and attached to the complaint as "Exhibit A," the money so tendered as a license tax was returned to A. L. Abrahams, with the statement that the charter of said company had been forfeited for the failure to pay the license tax for the year 1917, and thereafter the said persons then acting as directors of the United Tuna Packers caused all necessary steps to be taken to have the said charter revived as stated in the next paragraph.

"17. That upon learning that the said license tax had not been paid for the year 1917, the said A. Boyd, John W. Austin and John Tweeddale caused all the persons who composed the board of directors of said defendant on the 3rd of March, 1917, to-wit: said A. D. Pearce, W. Von Bergen, F. H. Johnson, Bertha V. Johnson and Arthur J. Abbott, to sign the necessary application to have the said franchise revived, and the said A. Boyd, John W. Austin and John Tweeddale caused to be forwarded with the said application the necessary and sufficient money to the secretary of state to revive the charter of said corporation, and on the 12th of March, 1918, a certificate of revivor was duly issued by the controller of the state of California, and said defendant ever since has been, and now is, existing and doing business under the laws of the state of California, and all annual license taxes thereafter have been duly and regularly paid.

"18. That upon the said certificate of revivor being received, the said A. Boyd, John W. Austin and John Tweed-

dale, caused the meeting to be held on the 13th day of March, 1918, by the said persons who had been directors on the 3rd of March, 1917, to-wit: A. D. Pearce, W. Von Bergen, F. H. Johnson, Bertha V. Johnson and Arthur J. Abbott, and at said meeting each of said persons successively tendered his or her resignation as a director, and as each resignation was accepted, first the said John W. Austin, then John Tweeddale, then A. Boyd, were elected directors of said corporation, and thereafter the said business of said corporation has been duly and regularly conducted and carried on by said directors.

"19. That there was no change or sale of any of the capital stock of said defendant corporation during the interim between the said 7th of March, 1918, when said plaintiff transferred all his stock and interest to said John W. Austin and A. Boyd, and the said 13th of March, 1918, when the said John W. Austin, John Tweeddale and A. Boyd were elected directors as hereinbefore recited.

"20. Between the 1st day of April, 1918, and the commencement of this action there was packed by said defendant canned fish and fish products to the value of $305,576.40, and that of the fish and fish products canned $109,955.50 was the value of standard tuna.

"21. That neither the Government of the United States of America, nor any duly authorized agent of said Government, has confiscated or commandeered, or otherwise taken, the fish or fish products mentioned, but the same have been sold by the defendant through agents other than plaintiff in the open market or are in the hands of the defendant in marketable condition.

"22. That the plaintiff has demanded performance of said purported contract, but that defendant, believing and relying upon the defense that the non-payment of said annual license tax rendered said contract not its act or deed, refused to carry out the same, and has delivered and sold its said fish and fish products through other brokers.

"23. That there was a market for all the canned fish and fish products of said defendant canned between the 1st day of April, 1918, and the commencement of this action, and that the same could have been sold by said C. E. Van Landingham if delivered to him, for the value of said fish and fish products as set out in paragraph 20. That the cost and

expense to said plaintiff of selling the said product would have been 3½% of the entire value of the fish and fish products canned by said defendant, and that said plaintiff would have realized a net profit of 1½% on $109,955.50 of tuna canned by defendant, and of 2½% on the balance of the fish and fish products canned by defendant.

"24. It is expressly understood and agreed that the agreed cost to the plaintiff for marketing the said fish of 3½% is without prejudice to any other suit by plaintiff against the defendant for any loss of profits occurring after the commencement of this suit, and that should plaintiff bring any subsequent suit for loss of profits or damages sustained subsequent to the bringing of this action, that the stipulation contained herein of a cost of 3½% to the plaintiff for selling, said fish and fish products, shall not be admissible in said action for or against either party.

"25. The defendant further stipulates that it has no defense to this action except its contention that the non-payment of the license tax for 1917 as hereinbefore recited, rendered the defendant incapable of making any contract whatever until after the issuance of the certificate of revivor, and that solely because of the failure to pay the said tax and the action of the secretary of state thereupon as hereinbefore set out, and not otherwise, this defendant did not exist at the time of the execution of said contract and said A. L. Abrahams, Ward, John Tweeddale, John W. Austin, C. E. Van Landingham and A. Boyd were not, at any of the times referred to in paragraphs 7 to 12 hereof, elected directors of said corporation, and that solely because of the failure to pay said license tax and the action of the secretary of state thereupon, as hereinbefore recited, and not otherwise, the said election of said A. L. Abrahams, John W. Austin, John Tweeddale, and A. Boyd was utterly void, and that at the time of the execution of the agreement sued on herein said John W. Austin, John Tweeddale and A. Boyd were not directors of said corporation, or officers thereof, and that the act of said John Tweeddale and A. Boyd in signing said contract as vice-president and secretary of said corporation was not the act or deed of the said corporation, nor was the act of the purported directors in authorizing said contract the act of said corporation, and the contract was not the act or deed of said corporation.

"26. No recitals of the defense relied on by the defendant in the foregoing paragraph, or in any other paragraph of this stipulation of facts shall be deemed or construed as any admission or concession by the plaintiff herein that the said contract was not the contract of said defendant, or that it was incapable of making or executing a contract, or that it was not bound by the acts of the persons who, as herein recited, purported to act as directors and officers of said corporation, or that the meetings hereinbefore set forth were not directors' meetings of said corporation."

Upon the foregoing findings of fact the court rendered its judgment in the defendant's favor, that the plaintiff take nothing by his action. It is from such judgment that the present appeal has been taken.

The sole question presented upon this appeal is as to the validity of said contract between the parties hereto. In view of the fact that it was purported to have been made and entered into on the part of said defendant at a time when its charter as a corporation was in a state of forfeiture for the nonpayment of its license tax, due January 1, 1917, under the provisions of the act of the legislature entitled "An act prescribing terms and conditions upon which corporations may transact business in this state, and providing penalties and forfeitures for non-compliance," approved May 10, 1915. (Stats. 1915, p. 422.) This act was amended and practically reframed by an act of the legislature approved on May 11, 1917 (Stats. 1917, p. 371), which amendatory act contains certain changes in verbiage from the former act, hereafter to be noted.

[1] It is the contention of the appellant herein that notwithstanding the forfeiture of the charter and suspension of the powers of said corporation under either or both of these acts it continued to act and function as a corporation *de facto* subsequent thereto and as shown by the stipulated facts herein and that in the capacity of such *de facto* corporation it made and entered into the contract in question and that such contract was and is valid as the act and contract of such defendant corporation. The question thus presented is this: Can a *de jure* corporation whose charter has been forfeited, and whose powers and functions have been suspended under either or both of the foregoing acts of the legislature, continue to function as a *de facto*

corporation so as to give validity to its acts and contracts entered into during the period of its forfeited charter and suspended powers? We are of the opinion that this question must be answered in the negative. The act of the legislature of 1915 states in its title that its purpose is that of "prescribing terms and conditions upon which corporations may transact business in this state." It provides in section 3 of said act that "no corporation heretofore or hereafter incorporated under the laws of this state or any other state, territory or foreign country shall do or attempt to do any intrastate business within this state by virtue of its charter or certificate of incorporation, without a state license therefor." By section 4 of the act it is made the duty of every such corporation "to procure annually from the secretary of state, a license authorizing the transaction of such business in this state, and pay therefor the license tax prescribed therein." The act then proceeds to fix the basis upon which the said corporate licenses shall be computed and then provides that "said license tax shall be due and payable to the secretary of state on the first day of January of each and every year. Such license tax shall be paid on or before the hours of 6:00 o'clock p. m. on the first Monday of February of each year and if not so paid shall, at said hour become delinquent." By section 7 of said act it is provided that:

"Sec. 7. At the hour of six o'clock p. m. of the Saturday preceding the first Monday in March of each year the charters of all corporations organized under the laws of this state and which have failed to pay the license tax and penalty prescribed by section four of this act shall be forfeited to the State of California, and the right of all foreign corporations to do intrastate business in this state, which have failed to pay said license tax and penalties shall be likewise forfeited."

Section 12 of said act provides:

"Sec. 12. It shall be unlawful for any corporation, either domestic or foreign, which has not paid the license tax, as in this act prescribed, to exercise the powers of such corporation, or to transact any intrastate business in this state, after six o'clock p. m. of the Saturday preceding the first Monday in March next following the delinquency. Each and every person who exercises any of the powers of a

corporation which has forfeited its charter or right to do intrastate business in this state, or who transacts any business for or in behalf of such corporation, after such forfeiture, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than one hundred dollars and not exceeding one thousand dollars, or by imprisonment in the county jail not less than fifty days or more than five hundred days, or by both such fine and imprisonment."

By section 13 of said act it is provided:

"Sec. 13. In all cases of forfeiture under the provisions of this act, the directors or managers in office of the affairs of any domestic corporation, whose charter may be so forfeited, or of any foreign corporation whose right to do business in this state may be so forfeited, are deemed to be trustees of the corporation and stockholders or members of the corporation whose power or right to do business is forfeited and have full power to settle the affairs of the corporation and to maintain or defend any action or proceeding then pending in behalf of or against any of said corporations, or to take such legal proceedings as may be necessary to fully settle the affairs of said corporation, and such directors or managers, as such trustees, may be sued in any of the courts of this state by any person having a claim against any of said corporations."

In section 14 of said act the manner is provided by which a corporation which has suffered the forfeiture prescribed in the act may be restored to its former corporate status and have reissued to it a license entitling it to do intrastate business in this state. This section contains the following proviso:

"Provided, however, that no corporation organized under the laws of this state which suffers forfeiture shall be relieved from the effect thereof, nor shall such license be issued, in the event that subsequent to the date of forfeiture its corporate name, or a name so closely resembling said name as will tend to deceive, has been adopted and is in use by another domestic corporation."

The foregoing provisions of the act of 1915 were reenacted in substance from the act of 1905 (Stats. 1905, p. 493), which act has been repealed in 1913. (Stats. 1913, p. 380.) This court has had occasion in several recent cases

to discuss the foregoing features of this and the earlier act, and their effect upon the existence and powers of corporations which have suffered the forfeiture of their charters under its terms. In the case of *Crossman* v. *Vivienda Water Co.,* 150 Cal. 575 [89 Pac. 335], this court held that a corporation which had been dissolved under the provisions of the Code of Civil Procedure relating to the voluntary dissolution of corporations had its existence so far terminated as a legal entity as to render it incapable of suing or being sued as a corporate body or in its corporate name. The court says (p. 580): "It is dead, and can no more be proceeded against as an existing corporation than could a natural person after his death. There is no one who can appear or act for it, and all actions pending against it are abated, and any judgment attempted to be given against it is void. As to this, all the text-writers agree, and their statement is supported by an overwhelming weight of authority." (Citing many cases.) In the case of *Newhall* v. *Western Zinc Mining Co.,* 164 Cal. 380 [128 Pac. 1040], an action had been brought against the defendant corporation for goods sold and delivered. The defendant appeared and answered as a corporation, its answer being verified by one of its directors. The answer admitted, but failed to deny, the corporate capacity of the defendant. The action was tried upon the pleadings as thus framed, and a judgment rendered against the corporation for a considerable sum of money. Thereafter a stockholder of the corporation appeared and moved to set aside such judgment, upon the ground that prior to the commencement of said action the charter of the corporation had been forfeited under the act of 1905 by its failure to pay its license tax; which motion, being denied, he appealed to this court, which decided that the motion should have been granted, holding, upon the authority of *Crossman* v. *Vivienda Water Co., supra,* that a corporation whose existence has been terminated, whether by judicial decree or by forfeiture of its charter under the act of 1905, cannot be sued and cannot exercise any corporate powers. The court says: "For that act clearly and unmistakably declares and provides for a forfeiture not dependent upon judicial determination and decree, but a forfeiture which is self-acting and operating. The language of the act does not even permit a doubt upon

this question. It not only declares the day and the hour when the forfeiture shall arise, but it makes it a penal offense for any officer or agent thereafter to exercise any corporate powers on behalf of the corporation and, finally, it provides that the winding up of the corporate affairs is imposed upon the directors or managers of the corporation who 'are deemed to be trustees of the corporation whose power or right to do business is forfeited.' These trustees and not the corporation may sue or 'may be sued in any of the courts of this state by any person having a claim against said corporation.' " In that case it was argued that the corporation having acted as such defending the action, was estopped and hence its stockholders were also estopped from setting up its nonexistence in an attack upon the judgment. But the court said: "To this it must be replied that the law authorizes the directors, and not one of them, to act as trustees. It empowers them as trustees to sue and be sued, but not to answer suits in the name of the defunct corporation. Brangier's answer was, therefore, not only without authority of law, but in direct violation of the law. And, finally, if, notwithstanding these plain violations of the law, assent be given to the statement of respondent that 'the business of the Western Zinc and Mining corporation was continued by defending this suit in its name,' it must inevitably result that the trustee who thus did continue the business of the Western Zinc Mining Company not only did so in violation of his powers and of the express mandate of the statute, but made himself criminally liable for his conduct, under section 9 of the amended act" (pp. 383, 384). This subject again came before this court in the case of *Aalwyn's Law Institute* v. *Martin,* 173 Cal. 21 [159 Pac. 158]. The plaintiff, alleging itself to have been a stockholder in the Ocean Shore Railway Company, a corporation, prior to the forfeiture of its charter under the act of 1905, sought, on behalf of said corporation, to have the title to certain of its property quieted as against certain persons who were formerly its directors but who had become trustees of the defunct corporation upon the forfeiture of its charter. This court denied the plaintiff that relief, holding that: "When a corporation has failed to pay its license tax, and a forfeiture of its charter has been declared, it ceases to be a corporation. (*Newhall* v. *Western*

*Zinc Mining Co.,* 164 Cal. 380 [128 Pac. 1040].) The title to the property formerly owned by the corporation vests in the former directors as trustees. The complaint in the case at bar does not seek to have the title of the trustees quieted, but on the contrary asks that the title of the Ocean Shore Railway Company be quieted, and the whole action is based upon the alleged ownership of the property by the said company. But the company is dead and may not own property. Even if we concede the plaintiff's capacity to sue, it is seeking relief upon a false theory and a general demurrer to its complaint will lie." In the case of *Rossi* v. *Caire,* 174 Cal. 74 [161 Pac. 1161], the question of the effect of the forfeiture of the charter of a corporation under the act of 1905, and also under the amendment thereto in 1907 (Stats. 1907, p. 746), upon the ownership and administration of its property, came up for consideration, this court holding that the corporation having ceased to exist under the provisions of said acts it was no longer capable of holding the title or possession of its former property, which thereafter belonged to the persons who were its stockholders at the time it ceased to be a corporation. In the later case of *Rossi* v. *Caire,* 186 Cal. 544 [199 Pac. 1042], the court went somewhat more fully into the question of the status of a corporation which had suffered the forfeiture of its charter under the act of 1905 and the acts amendatory thereto, and in so doing said:

"The status of a corporation whose charter is forfeited under the license tax act referred to is well settled by decisions of this court. The penalty imposed by the act for non-payment of the license tax prescribed was exceedingly severe and the consequence doubtless often disastrous. But in view of our constitutional provisions the absolute power of the state over corporation charters was such, and the intention of the act to accomplish this end was so clearly and unambiguously shown thereby, that there could not be any well-founded difference of opinion as to the result. The governor's proclamation having been duly made and the corporation having failed to pay within the specified time thereafter, the corporation simply ceased to exist, just exactly as in the case of a forfeiture for cause by judicial decree, without any existing provision of law for rehabilitation as a corporation."

In the case of *National Supply Co.* v. *Flack*, 183 Cal. 124 [190 Pac. 634], the status of corporations which had failed to pay their license tax under the act of 1915 arose, and this court, citing as authority therefor the foregoing cases, held that the failure to pay a license tax *ipso facto* terminated the corporate existence and that a judgment rendered against a corporation after the forfeiture of its charter was void.

Thus far in the foregoing line of decisions the court has been dealing with the status of corporations under the act of 1905 and the several acts amendatory thereto, and in the latter case applied the same doctrine to the status of corporations whose charters had been forfeited under the act of 1915. The United Tuna Packers Corporation, defendant herein, had, as we have seen, suffered the forfeiture of its charter in March, 1917, and under the terms of this later act. Thereafter and during the year or more which followed, according to the agreed statement of facts and findings of the trial court, the persons who had formerly constituted its board of directors undertook to continue to function as such, notwithstanding the forfeiture of the charter of the corporation. In the month of May, 1917, at a purported meeting of said board of directors of said defunct corporation, by successive resignations and elections, the entire membership of said board of directors was changed, all of its former members resigning, and in their place and stead three other persons being elected directors of the corporation and two vacancies being left unfilled. These acts were done prior to the adoption of the act of the legislature of 1917 (Stats. 1917, p. 371), which effected certain changes in the act of 1915, the effect of which will be hereinafter considered. These attempted changes in the personnel of the board of directors of the defunct corporation were therefore done, or attempted to be done, while the corporation was, as to its status, in the condition described by the language of the decisions of this court above quoted. Subsequent to the taking effect of the act of 1917, above referred to, it was these persons, together with two others who had been added to their number by the same method of election, who assumed as directors of said corporation, to enter into and execute the contract with the plaintiff, which forms the basis of this action. The question has arisen in

the case as to the effect of the enactment of certain provisions of the act of 1917, which, while it purports to be an amendment, amounts to a revision of the act of 1915 upon the status of this corporation at the date of said contract. Under section 7 of the act of 1915 the charters of all corporations which failed to pay their license tax were declared to be "forfeited to the State of California." Under section 11 of the act of 1917 it was declared that "the corporate rights, privileges and powers of every domestic corporation which has failed to pay, etc., shall . . . be suspended and incapable of being exercised for any purpose or in any manner." (Except for certain limited purposes.) The act further declares that after such suspension "every person who attempts or purports to exercise any of the rights, privileges or powers of any delinquent domestic corporation except as permitted by this act, or, who transacts or attempts to transact any intrastate business in this state in behalf of any forfeited foreign corporation, shall be guilty of a misdemeanor," and further provides that "every contract made in violation of this section is hereby declared to be void." There is some discussion in the briefs of counsel herein as to the effect of the foregoing changes in the verbiage of the law affected by the adoption of the act of 1917, but in view of our conclusions herein we do not think these verbal changes in the law material to the matter in controversy here, particularly in view of what was said by this court in the case of *Ransome Crummey Co.* v. *Superior Court,* 188 Cal. 393 [205 Pac. 446], wherein these changes in the language of the law were noted and discussed. In that case the suspension of the powers of the corporation had occurred under the act of 1917 and the court significantly says: "During the time its taxes were unpaid, petitioner was shorn of all rights save those expressly reserved by the statutes. The right to institute or maintain actions is not included in this reservation, but is denied to corporations as a part of the penalty"; and the court further declares:

"Furthermore, we are of the opinion that the subsequent revival of the corporate rights, powers and privileges did not have the effect of validating the acts attempted during the period of suspension. The revival is not made retroactive by the statute. The suspension of the rights, powers,

and privileges is a disability imposed on a corporation as a penalty, and it would tend to deprive the statute of its force and encourage a corporation in default to postpone payment of its taxes indefinitely if it were held that by subsequent payment of the delinquent taxes all the benefits of the attempted acts denied to the corporation could be secured. That it was not intended that the acts during the time of the suspension should have any effect whatever is shown by the fact that both the sections of the Political Code and the Statutes of 1917 above referred to make the performance of such acts by any person on behalf of the corporation a misdemeanor.''

In view of the language of the foregoing decisions of this court and of the terms of the statute under which the charter of this corporation had been forfeited for the non-payment of its license tax, we are of the opinion that during the period of such forfeiture of its charter, said corporation could not become, be or act as a corporation *de facto* so as to permit the execution of or give any validity to the contract upon which the plaintiff herein relies as the basis of this action. The corporation, when it had failed to pay its license tax and the forfeiture of its charter had resulted, ceased to be a corporation. It was dead. It had no longer a board of directors or other body of officers or agents. The persons who had been its directors prior to its decease ceased to be such and became the trustees of an express trust, with such powers only as were expressly conferred by the statute declaring the forfeiture of its charter, but with no power to select, appoint, or authorize others to take their places or perform their duty as such trustees. Under the express terms of the statute it was declared to be unlawful for such a defunct corporation to transact any intrastate business whatever, and every attempt of any of its former officers to exercise any of the former powers of the corporation or to transact any such business for or on behalf of such corporation after and during the period of such forfeiture of its charter was made a misdemeanor. Under the terms of the statute of 1915, the contracts of such a corporation were not expressly declared to be void, but such we think was the effect of the language of the statute making them unlawful. However, under the statute of 1917, section 11,

the omission to expressly so declare was supplied by the
express statement that "every contract made in violation
of this section is hereby declared to be void." It is to be
noted that the contract upon which the appellant herein
counts and relies was entered into after the statute of 1917
had come into effect and that it was attempted to be made
and entered into on behalf of such defunct corporation by
a set of persons who were not its directors at the time
of its demise, but who had attempted to be made such by
the members of its former board of directors, whose powers
to act as such had ceased and who at the time of such
purported change possessed only the limited powers of
trustees of an express trust under the terms of the
statute, in which the power to choose others to administer
their trust was not embraced. To hold that such a corpora-
tion could, after its death, after it had ceased to have
officers, directors, agents or attorneys; after it had been
stripped of all its property; after it had become incapable
of suing or being sued or of having judgments obtained
against it; after its every attempted act in the way of
the transaction of any intrastate business had been expressly
made unlawful and after those of its former officers or
agents who attempted to do or transact any act of business
on its behalf during the period of such forfeiture of
its charter had been declared guilty of crime, still function
as a corporation *de facto* would be to practically nullify
both the language and intent of the statute under which
the forfeiture of its charter and powers had been declared,
and would be, in effect, to cast upon the state the burden of
instituting judicial proceedings in the nature of *quo warranto*
against every such corporation to have decreed the for-
feiture which the statute had itself expressly declared. The
appellant herein, however, cites section 358 of the Civil
Code as supporting his contention and also strongly relies
upon the cases of *McCann* v. *Children's Home Society*, 176
Cal. 359 [168 Pac. 355], and *First National Bank etc.* v.
*Penning,* 28 Cal. App. 267 [151 Pac. 1153], as sustaining
his claim that the respondent, having continued to act as
a corporation, after the forfeiture of its charter, and having
entered into this contract while purporting so to act, is
estopped to deny its corporate existence and powers in
this action. He also cites cases from other jurisdictions

to the same effect. It is to be noted that the cases upon which the appellant relies are in no instance cases in which the acts of the corporation relied upon to sustain its *de facto* status in relation to the particular transaction sued upon, were acts done or attempted to be done or powers exercised or sought to be exercised in express violation of law. They are, without exception, cases where through some defect or oversight in attempting to organize or continue to do business as a corporation *de jure* the institution had nevertheless in good faith assumed to act as such in entering into the particular transaction. Such a state of things is well illustrated by the case of *McCann* v. *Children's Home Society, supra,* in which, manifestly, the institution purporting to act as a corporation was violating no express statute in so doing, but was merely assuming to do *de facto* and in good faith that which it could have done *de jure* but for the defect in its attempted organization or exercise of corporate powers. But that is not this case since the law has expressly declared that a corporation, the charter of which has been forfeited under the terms of the statute in relation to the payment of license fees cannot do any act either *de jure* or *de facto* and that any attempt whatever so to do is unlawful, and that those of its former officers or agents making such attempt shall be guilty of a crime. [2] As to section 358 of the Civil Code it must be held to have application only to such corporations as are not forbidden by positive law to do business as *de facto* corporations and cannot be given application to the attempted acts of corporations whose charters have been forfeited and whose acts thereafter have been expressly made unlawful by the terms of the statute declaring such forfeiture.

The judgment is affirmed.

Wilbur, J., Lawlor, J., Lennon, J., Sloane, J., and Waste, J., concurred.

Shaw, C. J., dissented.

Rehearing denied.

In denying a rehearing the court filed the following opinion on August 31, 1922:

THE COURT.—The application for a rehearing is denied.

[3] While the facts in relation to the forfeiture of the corporate charter were actually unknown to all the parties concerned, the means of knowledge thereof were equally available to all. It further appears that the plaintiff did not expend any money or services or change his situation in any respect in reliance upon the contract, and that the defendant has not received and retained any benefit accruing therefrom. There is, therefore, no basis here for the application of the equitable doctrine of estoppel.

Myers, J., *pro tem.*, Waste, J., Richards, J., *pro tem.*, and Lennon, J., concurred.