[S. F. No. 2990.    Department One.—May 14, 1902.]

## E. R. SINKLER, Appellant, v. S. SILJAN, Respondent.

ACTION UPON NOTE—PROTECTION OF BONA FIDE PURCHASER.—The plaintiff, in an action upon a note, who took the same before maturity, for value, and without notice of any defenses against it, is protected as a *bona fide* purchaser of the note, and is entitled to recover against the maker.

ID.—PURCHASE FOR VALUE—SETTLEMENT OF ACCOUNTS—EXCHANGE OF NOTES.—Where the consideration of the note in suit was the settlement of accounts between the plaintiff and the payee of the note and the giving of another note by the plaintiff to such payee for the difference in amount, which other note is outstanding and unpaid, it is sufficient to establish a purchase for value of the note in suit.

ID.—EVIDENCE—TESTIMONY OF PAYEE OF NOTE—IMPEACHMENT—CONTRADICTORY STATEMENTS—FOUNDATION NOT LAID.—Where the payee of the note testified for the plaintiff, without any foundation being

laid for impeaching his testimony, it was error to admit, against the objection of the plaintiff, evidence of other statements of the payee, introduced as inconsistent with his testimony, as to which his attention had not been called; and where such contradictory statements bore directly on a material issue, and tended to impair both the testimony of the payee and that of the plaintiff, and to lead the jury to disregard an instruction of the court to find for the plaintiff, the error was necessarily prejudicial.

ID.—INAPPLICABLE INSTRUCTIONS.—Instructions in regard to inadequacy of consideration of the note in suit, and to proof of conspiracy between the plaintiff and the payee, which were wholly inapplicable to the facts and the testimony in the case, were erroneous.

ID.—INSTRUCTION AS TO PUTTING PLAINTIFF UPON INQUIRY—CONSTRUCTIVE NOTICE.—It was error to instruct the jury that if plaintiff did not inquire concerning the consideration of the note in suit, from a belief or suspicion that inquiry would disclose a defense thereto, or if circumstances were such as to invite inquiry on plaintiff's part, the jury should find that plaintiff did not take the note in good faith, and that he was chargeable with constructive notice, if the jury could infer such notice from the relations of the parties, the circumstances of the indorsement, and the plaintiff's means of knowledge.

ID.—BURDEN OF PROOF.—Where fraud or illegality in the inception of the note in suit is shown, the burden is cast upon the indorsee to show that he purchased the note before maturity or from an innocent indorsee, for value, in the usual course of business, and when this is done, unless the evidence shows that the note was taken by plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show that plaintiff took the note with notice of the defendant's equities.

ID.—PRESUMPTION OF KNOWLEDGE—FACTS PUTTING UPON INQUIRY NOT SUFFICIENT.—In order to create a presumption of knowledge of the facts impeaching the validity of a note claimed to have been procured by fraud, it must be shown, either directly or by circumstances, that he had notice of such facts; and mere proof of circumstances putting a reasonable man upon inquiry is not sufficient to constitute a defense to a suit by the holder of the note for value before maturity.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. Thomas F. Graham, Judge.

The facts are stated in the opinion.

Corbet & Goodwin, and L. H. Moultrie, for Appellant.

John S. Partridge, for Respondent.

CHIPMAN, C.—Action on promissory note, executed in Alaska by defendant on July 3, 1900, payable to J. G. Bjornstad, or order, August 18, 1900, for three thousand dollars, alleged to have been transferred to plaintiff before maturity and without notice of any defenses thereto.

Defendant in his answer avers that prior to July 3, 1900, defendant and Bjornstad had been intimate friends, both in Alaska and at their former home in the town of Valhalla, North Dakota; that upon leaving Alaska to return to his home Bjornstad made certain false and fraudulent representations, by means of which defendant was induced to execute the note in suit, and that the note was executed without any consideration therefor; that on his return to North Dakota said Bjornstad did not in fact engage in the business of buying and selling drugs, which he represented it was his intention to do, but in pursuance of his fraudulent purpose entered into a conspiracy with said plaintiff herein to defraud defendant, and pursuant thereto transferred said note to plaintiff long after maturity; that plaintiff knew the circumstances under which said note was made and delivered to said Bjornstad, and plaintiff accepted the same "in order that he might begin a collusive and fraudulent action thereon as an indorsee"; and that plaintiff paid no consideration for said note. The cause was tried by the court before a jury, and defendant had the verdict and judgment. Plaintiff appeals from the judgment and the order denying his motion for a new trial.

The instructions given by the court fully covered the case, and at the conclusion thereof it further instructed the jury that "inasmuch as there is no evidence that plaintiff had any knowledge or notice of any want of consideration or fraud in the inception of the note sued on, and the evidence is uncontradicted that he purchased the note for value before maturity, plaintiff is entitled to judgment herein, and you are hereby instructed to return a verdict for plaintiff for the face of the note . . . with interest. . . ." After having thus practically taken the case from the jury, the court, at the request of defendant, gave several instructions bearing on different phases of the case, especially as to matters pleaded in defense, and in this manner the case went to the jury. Appellant contends that the verdict was against law, because

contrary to the court's instruction to find a verdict for plaintiff. It is also claimed that some of the instructions given at the request of defendant were erroneous and prejudicial, as not correctly stating the law, and also that instructions were given upon matters as to which there was no evidence. Error is also claimed in admitting certain testimony against plaintiff's objection.

The action was brought in the city and county of San Francisco, presumably the residence of defendant, and he was present at the trial. Plaintiff and the payee of the note, Bjornstad, reside at Grafton, in North Dakota, and neither of them was present at the trial; their testimony was taken by deposition. The note was executed in Alaska on the day that Bjornstad left that territory to return to his home. It appeared that shortly after he reached Grafton he met plaintiff, to whom he was indebted; plaintiff stated to Bjornstad that he wished a settlement, and they two went to plaintiff's office, where his account was examined, and it was agreed that the balance due was five hundred dollars. Bjornstad had no money, and proposed to transfer defendant's note to plaintiff and take plaintiff's note for the difference, and thus settle the account; plaintiff gave Bjornstad his note for twenty-five hundred dollars, which is outstanding and unpaid, and plaintiff took defendant's note here in suit. The testimony is direct and uncontradicted that plaintiff knew nothing as to how Bjornstad obtained the note, what was its consideration, or, in short, any of the facts connected with its execution and delivery. Plaintiff had known defendant and believed him to be amply able to pay the note; he took it before maturity and without notice of any defenses against it. As the evidence now stands, we think the court rightly instructed the jury to find a verdict for plaintiff.

There were rulings on the admission of certain testimony that were prejudicial to plaintiff. When Bjornstad was testifying he was not asked as to any conversations with other persons since the transfer of the note to plaintiff, or as to any statements made by him to any one, relative to the note or his ownership or transfer of it.

Defendant was in Grafton, North Dakota, in the fall of 1900, some time after the transfer of the note. He and Bjornstad met and had some talk about a settlement, and

defendant testified: "I told him [Bjornstad] that he would have to call this note back, and that that is the only way we could settle it. Then he said, 'If you will loan me five hundred dollars I will give the note back—you will get the note back.'" Witness Euchane testified to a conversation he had, at Grafton, with Bjornstad, in October, 1900. He testified: "We got to talking and he asked me if I was going back to Nome this summer, and I said I might go, and so he wanted me to find out how much Siljan could take out this summer; he had a note against him for three thousand dollars."

There were other statements of Bjornstad testified to by other witnesses on other matters, introduced as inconsistent with his testimony, and as to which his attention was not called when testifying. Timely objection was properly made to all this evidence and exceptions reserved. This testimony was in violation of section 2052 of the Code of Civil Procedure. If it were admissible to show that Bjornstad had made statements since the transfer of the note tending to discredit plaintiff's title as indorsee, and to show that the payee-indorser still held the note, which in any event could only be done to impeach Bjornstad's testimony, the statements should have been related to him "with the circumstances of the times, places, and persons present," and he should have been "asked whether he made such statements, and, if so, allowed to explain them"; and this is generally the rule whether the declarations of the witness are offered for the purpose of impairing the force of his testimony, or are offered as contradictory statements for the same purpose. In either case an opportunity should be given the witness to explain what he said. These statements of plaintiff's assignor bore directly on a material issue before the jury, and could not have failed to impair not only Bjornstad's testimony but that of plaintiff himself, and probably had a direct influence in leading the jury to disregard the positive instruction of the court to find for the plaintiff, and were necessarily prejudicial.

The instruction to the effect that "the buying of a note against a solvent maker, the purchaser knowing him to be such, for a nominal or grossly disproportionate consideration, is in itself evidence of bad faith," and is such constructive notice as would put the buyer on inquiry, had no application

to the facts in the case, except as to the solvency of defendant and plaintiff's knowledge of his solvency. The evidence is uncontradicted that plaintiff canceled a debt of Bjornstad for five hundred dollars and gave his own note for twenty-five hundred dollars, for which he is still liable.

The instruction as to proof of conspiracy was wholly inapplicable. Although a conspiracy was alleged in the answer, there is no pretense that there was the slightest evidence of a conspiracy.

The court gave the following instruction: "If you think that plaintiff did not inquire concerning the original consideration of the note from a belief or suspicion that inquiry would disclose any defense against the note as to the original payee, or if you find that circumstances were such as to invite inquiry on the part of the plaintiff, then you must find that plaintiff did not take the note in good faith. . . . Notice and knowledge need not be actual notice, but knowledge or the means of knowledge to which the party willfully shuts his eyes." The jury were further instructed that "constructive notice, in such a case as this, may be inferred from the relations of the parties, the circumstances of the indorsement, and the means of knowledge on the part of the plaintiff."

To say that one who purchases a note before maturity and pays full value therefor, as plaintiff did in this case, must be prepared to defend his purchase against all equities and defenses the maker might urge against the payee, if in the purchase "the circumstances were such as to invite inquiry on the part of the purchaser," is too broad a statement of the rule, and gives to the jury too uncertain and indefinite a guide. The rule in such cases as this is quite fully considered in *Eames* v. *Crosier*, 101 Cal. 260. It was there held that where fraud or illegality in the inception of the note is shown the burden is cast upon the indorsee to show that he is an innocent holder, and this he may do by showing that he purchased the note before maturity, or from an innocent indorsee for value, in the usual course of business. "When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances *creating the presumption that he knew the facts impeaching its validity,* the burden is cast upon the defendant to show, if he would defeat the plaintiff in his action, that the latter took the instrument with notice

of the defendant's equities.'' There is a marked difference, as we conceive, between circumstances ''such as to invite inquiry'' and circumstances ''creating the presumption'' that plaintiff knew the facts impeaching the validity of the note. It was said in *Collins* v. *Gilbert,* 94 U. S. 753, that to defeat the rights of a *bona fide* holder for value of a promissory note, claimed to have been procured by fraud, it must be shown, either directly or by circumstances, that he had notice of such infirmity. ''Proof of such facts and circumstances as would have put a reasonable man upon inquiry in relation thereto are not sufficient to constitute a defense to a suit by the holder.''

It is advised that the judgment and order be reversed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Harrison, J., Garoutte, J., Van Dyke, J.