[Sac. No. 3637. In Bank.—September 1, 1926.]

## C. E. GOODALE, Respondent, v. CRAIG S. THORN, Appellant.

**[1]** NEGOTIABLE INSTRUMENTS—WRITTEN PROMISES TO PAY MONEY—DEFENSES—FRAUD AND ILLEGALITY—NOTICE—BURDEN OF PROOF.—It is the rule in this state that, in an action upon a negotiable instrument, upon proof by the defendant of fraud or illegality in the inception of the instrument, the burden is cast upon the indorsee to show that he is an innocent holder, which he may do by showing that he purchased it before maturity, or from an innocent indorsee for value, in the usual course of business; and when this is done, unless the evidence shows that the paper was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden

---

1. See 19 Cal. Jur. 1039; 3 R. C. L. 1042.

is cast upon the defendant to show that the former took the instrument with notice of the defendant's equities.

[2] ID.—TRADE ACCEPTANCES.—In an action upon two trade acceptances, each calling for the payment of a certain amount of money, which were given in payment of the purchase price of certain hogs, which defendant alleges, in effect, the seller made certain wilful misrepresentations as to the character of, and that, therefore, no consideration whatever was received for the acceptances, and it being further alleged by defendant that the plaintiff acquired the acceptances with full knowledge of the contract of sale, the statement of the court during the trial that the burden was not upon plaintiff to prove the affirmative of the issue that plaintiff had purchased the instrument sued upon before maturity, in good faith and without notice, did not affect defendant's rights in the premises nor in any manner operate to his prejudice, where, notwithstanding the trial court's statement of the law to the contrary, the plaintiff assumed and sustained the burden of proving the affirmative of said issue.

[3] ID.—INFIRMITY OF INSTRUMENTS—NOTICE.—Under the law of this state, to constitute notice of an infirmity in a negotiable instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith; and mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith.

[4] ID. — TRANSFER OF PAPER—BLANK INDORSEMENT.—The fact that the instruments, in such a case, were not indorsed by a bank which purchased them, the transfer being consummated by indorsement in blank by the payee and suit on them having been brought by a third party, is unimportant, as they were negotiable by mere delivery and payable to bearer after the blank indorsement.

[5] ID. — EVIDENCE — ABANDONMENT OF EXAMINATION OF WITNESS—LACK OF ERROR.—In such a case, the court's ruling sustaining an objection to the question asked by defendant's counsel of the plaintiff whether, after acquiring the trade acceptances, he transferred the same to anyone else, cannot be predicated as reversible

---

3.  See 19 Cal. Jur. 865; 3 R. C. L. 1071.

4.  See 19 Cal. Jur. 850; 3 R. C. L. 970.

error, where, after the ruling the court directed the counsel to proceed, but the latter abandoned further examination on the point.

[6] ID.—IRRELEVANT EVIDENCE.—In such a case, evidence sought to be elicited from the plaintiff by defendant to the effect that the person through whom the paper was purchased by the bank in question from the payee was the real owner of certain shares of stock held by plaintiff in a certain other bank of which said person was president, was irrelevant to the issues of the case.

[7] ID.—INFIRMITIES OF INSTRUMENTS—KNOWLEDGE ACQUIRED AFTER PURCHASE. — If the plaintiff acquired knowledge of infirmities of the instrument sued upon subsequent to the time he purchased and became the owner of the same in due course, such knowledge would not have affected his right to recover thereon.

[8] ID.—LACK OF REVENUE STAMPS—AROUSING OF SUSPICION.—In such a case, absence of revenue stamps upon the trade acceptances, which defendant claims amounted to a circumstance sufficient to arouse suspicion of a prudent man as to the regularity of the transaction represented by the instruments, and therefore the failure to inquire into the truth of the circumstances constituted bad faith, is insufficient as a defense, as, without actual knowledge, mere proof of circumstances putting a reasonable man upon inquiry is not sufficient to constitute a defense to a suit by the holder of negotiable paper for value before maturity.

[9] ID.—OFFER OF EVIDENCE—PROPER REJECTION.—In such a case, the court properly refused evidence proffered by defendant just prior to the conclusion of the evidence to prove the alleged infirmity of the instrument sued upon, where the offer was made after defendant had failed to overcome plaintiff's evidence establishing the fact that plaintiff purchased said instruments before maturity, in good faith, and for value, and without notice of any infirmity therein, and also after defendant announced that he had no further evidence to offer on that issue.

[10] ID. — PURCHASE OF NEGOTIABLE INSTRUMENTS — PROMISSORY NOTE FOR PURCHASE PRICE — RIGHT OF RECOVERY—SECTION 3135, CIVIL CODE.—Where plaintiff gave his promissory note in payment of the purchase price for the trade acceptances sued upon, the contention that, under section 3135 of the Civil Code, plaintiff could not recover upon the instruments, in the absence of evidence showing payment in full or in part of the note representing the purchase price or direct evidence that the seller accepted the

---

8. Absence of revenue stamps as affecting *bona fides* of purchaser of negotiable instrument, notes, 6 A. L. R. 1701; 21 A. L. R. 1125.

note in payment of the purchase price, cannot be maintained, as the note constituted the original debt and liability thereon attached at once and at the time of the delivery of the note the purchase price for said instruments was paid in full.

(1) 8 C. J., p. 984, n. 60, p. 989, n. 98, 99, 2.   (2) 4 C. J., p. 955, n. 35; 8 C. J., p. 1046, n. 9.   (3) 8 C. J., p. 501, n. 18, p. 521, n. 69. (4) 8 C. J., p. 359, n. 95, 96.   (5) 4 C. J., p. 720, n. 46 New, p. 732, n. 85.   (6) 8 C. J., p. 1020, n. 7.   (7) 8 C. J., p. 507, n. 51, p. 1023, n. 62, p. 1024, n. 65.   (8) 8 C. J., p. 513, n. 5.   (9) 8 C. J., p. 1060, n. 26 New.   (10) 8 C. J., p. 482, n. 74.

APPEAL from a judgment of the Superior Court of Tulare County.  W. B. Wallace, Judge.  Affirmed.

The facts are stated in the opinion of the court.

William Ellis Lady for Appellant.

Bradley & Bradley for Respondent.

THE COURT.—The defendant herein, Craig S. Thorn, prosecutes this appeal from a judgment rendered against him in an action brought by the plaintiff, C. E. Goodale, to recover upon two assigned trade acceptances dated October 1, 1920, each calling for the payment of fifteen hun'red dollars.  Said trade acceptances were drawn by J. P. Walker at Visalia, California, accepted by defendant on October 1, 1920, and made payable at the Merchants National Bank, Los Angeles.  They are identical in form, except as to time of payment, one being made payable in eight months and the other in fifteen months after the date thereof, and, as indicated by their terms, were taken in payment for ten registered Duroc hogs, sold by Walker to defendant.

Each trade acceptance is made the subject of a separate count in the complaint, the allegations of both counts being substantially the same, plaintiff having alleged therein, among other things, that he purchased said trade acceptances before the date of maturity thereof for a valuable consideration in the usual course of business and without any knowledge or notice that the same would not be paid by the defendant when due.

The defendant in his answer, besides denying the above-mentioned allegations relating to plaintiff's acquisition of said trade acceptances, alleged with reference thereto that Marco H. Hellman or the Merchants National Bank of Los Angeles was the owner thereof; that said instruments were placed in plaintiff's hands for collection after maturity, plaintiff paying no consideration therefor and knowing at the time of the transfer thereof to him that the same would not be paid by the defendant on account of certain alleged misrepresentations having been made to him by Walker regarding the hogs in payment for which said trade acceptances were given. The answer then alleges in substance that prior to the execution and delivery of said trade acceptances defendant purchased from Walker ten Duroc hogs, consisting of one boar and nine sows, which were wilfully represented by Walker as having been actually registered with the National Duroc-Jersey Record Association; that Walker agreed to deliver the registration certificates therefor to defendant at the time of the delivery of said animals, but failed to do so until long thereafter and then furnished certificates for only six sows; that Walker knew that defendant "made said purchase for the purpose of raising hogs of high quality, subject to registration," and upon information and belief alleged that the boar and the three sows for which certificates were not furnished were common stock, never having been registered at all, and for that reason were valueless to defendant for the purpose for which they were purchased; that therefore defendant "received no consideration whatever for the acceptance of said trade acceptances." Continuing, the answer alleges that Walker made such representations with full knowledge that they were untrue and with intent to deceive the defendant; that defendant was deceived thereby and induced by reason thereof to sign said trade acceptances. It is furthermore alleged that if plaintiff became the owner of said trade acceptances he "acquired the same with full knowledge of the contract aforesaid between the said J. P. Walker and this defendant of which the alleged trade acceptances are a portion and with full notice that the said alleged trade acceptance was conditioned as to its payment upon the delivery of the ten registered Durocs mentioned therein, with their proper certificates of registration and that delivery thereof had not

been made.'' The answer also sets up a counterclaim for the payment of four thousand dollars based upon the same matters urged as a defense, the prayer of the answer being that plaintiff take nothing by his action and that defendant be awarded damages in the sum of four thousand dollars. Upon the issues of fact thus tendered, the trial court found in plaintiff's favor and judgment was entered accordingly.

At the commencement of the trial, a discussion occurred regarding the nature of the issues to be tried and the order in which the proof thereon should be offered, during which the trial court stated, after being informed that defendant had denied the allegations of the complaint relating to plaintiff's having purchased said instruments before maturity, in good faith and without notice, that the burden was not upon plaintiff to prove the affirmative of that issue. Defendant contends that this was error.

[1] It is doubtless the rule in this state, as defendant in effect contends, that ''upon proof by the defendant of fraud or illegality in the inception of the note, the burden is cast upon the indorsee to show that he is an innocent holder. This the latter may do by showing that he purchased the note before maturity, or from an innocent indorsee for value, in the usual course of business. When this is done, unless the evidence shows that the note was taken by the plaintiff under circumstances creating the presumption that he knew the facts impeaching its validity, the burden is cast upon the defendant to show, if he would defeat the plaintiff in his action, that the latter took the instrument with notice of the defendant's equities.'' (*Eames* v. *Crosier*, 101 Cal. 260 [35 Pac. 873].) To the same effect are the cases of *Sinkler* v. *Siljan*, 136 Cal. 356 [68 Pac. 1024]; *Bell* v. *Pleasant*, 145 Cal. 410 [78 Pac. 957]; *Blockman Commercial Bank* v. *Moretti*, 177 Cal. 256 [170 Pac. 419].

[2] But in the instant case it cannot be successfully maintained that the ruling complained of affected defendant's rights in the premises or in any manner operated to his prejudice because it is shown by the record that notwithstanding the trial court's statement of the law to the contrary, the plaintiff assumed and sustained the burden of proving the affirmative of the issue mentioned. In this connection the record discloses that as a part of plaintiff's case plaintiff was called as a witness and upon direct and cross-

examination testified that he purchased said instruments before maturity in good faith, by paying the face value therefor, without notice of any of the alleged infirmities thereof which were pleaded by the defendant in his answer. He was afterward recalled as a witness by the defendant and gave substantially the same testimony as he gave in support of his own case. His testimony upon this point was in a measure corroborated by that of Walker; and when the evidence was about to close at the conclusion of the trial, counsel for defendant stated that he had no other proof to offer as to plaintiff's knowledge of the alleged infirmities of said instruments. It will therefore be seen that the evidence thus adduced in plaintiff's behalf was not only sufficient to meet the requirements of the above-mentioned rule as to the burden of proof, but was also ample to sustain the finding of the trial court that plaintiff was a purchaser in good faith, for value, and without notice.

During the occurrence of the transactions mentioned in the pleadings, Marco H. Hellman was vice-president of the Merchants National Bank of Los Angeles and interested in the Herman W. Hellman estate. Walker was plaintiff's son-in-law and with Marco H. Hellman was engaged in the business of raising and selling hogs, a portion of the registered stock belonging to them having been previously owned by the Hellman estate and located on property belonging to Goodale. Within two weeks after obtaining said trade acceptances from the defendant, Walker sold the same through Marco H. Hellman to the Merchants National Bank, the transfer being consummated by indorsement thereof in blank by Walker. Subsequently and during the month of March, 1921, which was prior to the date of maturity of the first instrument, Goodale, for the purpose of assisting Walker in making payments on a ranch which Walker and a partner named Walters were buying from one Ray, purchased said instruments from the Hellman estate without further indorsement being made thereon, giving in payment therefor his promissory note for three thousand dollars, payable in six months. In what manner or when the Hellman estate acquired said trade acceptances does not appear. When the first instrument fell due and demand for payment thereof was made by Goodale, the defendant Thorn stated, according to Goodale's testimony, that he was unable to

pay the same until he had sold some of his hogs; but afterward and upon maturity of the second instrument, he refused to pay. either of said instruments. Soon thereafter and on March 13, 1922, Goodale commenced this action.

[3] In view of the facts above related, particularly those showing the family and business relationships of the parties, defendant contends that regardless of the question of the burden of proof, Goodale, at the time he purchased said trade acceptances, had knowledge of suspicious circumstances sufficient to have put a prudent man on inquiry as to the nature of the transactions represented by said trade acceptances, and that having ignored said suspicious circumstances, although means of ascertainment of the truth thereof were at hand, he is charged with whatever knowledge such an inquiry would have disclosed. It is the declared law of the state, however, that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith" (Civ. Code, sec. 3137); and "mere knowledge of facts sufficient to put a prudent man on inquiry, without actual knowledge, or mere suspicion of an infirmity or defect of title, does not preclude the transferee from occupying the position of a holder in due course, unless the circumstances or suspicions are so cogent and obvious that to remain passive would amount to bad faith." (*Popp* v. *Exchange Bank,* 189 Cal. 296 [208 Pac. 113]; *Sinkler* v. *Siljan, supra.*) In our opinion the asserted suspicious circumstances relied upon by defendant fall far short of amounting to an impeachment of plaintiff's claim of good faith; and moreover, plaintiff having testified, as above pointed out, that he purchased said trade acceptances before maturity by paying the face value therefor, being at the time unaware of the existence of any controversy regarding the sale of said hogs, the circumstances enumerated by defendant at most raised but a mere conflict of evidence on that point, and consequently are legally insufficient to justify a nullification on appeal of the trial court's finding on this disputed issue. [4] The fact that said instruments were not indorsed by Merchants National

Bank or the Hellman estate is unimportant. They were made payable to Walker and legally transferred by him to the bank by Walker's blank indorsement thereof (Civ. Code, sec. 3112); thereafter they were negotiable by mere delivery (Civ. Code, secs. 3111 and 3130), and payable to bearer. (Subd. 5, sec. 3090, Civ. Code.)

[5] With reference to this same question of plaintiff's ownership of said instruments, defendant assigns as error certain rulings of the trial court upon the admissibility of proof. Goodale was asked by defendant whether, after acquiring said trade acceptances, he transferred the same to anyone else. Objection was made by plaintiff's counsel and the following colloquy took place: "The Court: . . . I think the objection will have to be sustained to that. Mr. Bagby (counsel for defendant): I presume your honor sees the purpose of the question, just to test his ownership at the present time? The Court: Well, proceed. Mr. Bagby: That is all at this time with this witness." Assuming that under the issues tendered by the pleadings defendant was entitled to ask this question, it does not appear whether the court's direction to "proceed" meant to proceed along the line of examination then being pursued or some other. To justify reversal, error must be clearly shown, and inasmuch as defendant's counsel abandoned further examination on this point without making certain the meaning of the court's ruling, we think defendant is now precluded from taking advantage of the point. The other two rulings complained of were not erroneous. [6] One relates to the exclusion of testimony attempted to be elicited from Goodale by defendant to the effect that Marco H. Hellman was the real owner of certain shares of stock held by Goodale in a bank at Lemon Cove, of which bank the latter was president; this was a matter not relevant to the issues of the case. [7] The other assignment pertains to an objection made by plaintiff to a question wherein Goodale was asked by defendant whether after purchasing said instruments he discussed the transaction with Walker. No ruling was made on this objection; and in any event, if Goodale did acquire knowledge of infirmities in said instruments subsequent to the time he purchased and became the owner of the same in due course, such knowledge would not have affected his right to recover thereon.

[8] Defendant furthermore contends that inasmuch as there were no revenue stamps affixed to said instruments at the time plaintiff purchased them, neither instrument was "complete and regular upon its face," and consequently, by virtue of the provisions of section 3133 of the Civil Code, plaintiff was not a holder thereof in due course. That each instrument was "complete and regular upon its face" so far as it was necessary to conform to the provisions of section 3082 of the Civil Code, which defines the requirements for negotiable instruments, defendant does not deny; and moreover, it is conceded that the omission to affix the stamps did not affect the completeness and regularity of said instruments to the extent of precluding their introduction in evidence nor of impairing their negotiability; but it is claimed by defendant that the absence of the stamps amounted to a circumstance sufficient to arouse suspicions of a prudent man as to the regularity of the transaction represented by said instruments, the failure to inquire into the truth of which circumstance constituted bad faith. This brings us back to the same proposition, already disposed of, that without actual knowledge, mere proof of circumstances putting a reasonable man upon inquiry is not sufficient to constitute a defense to a suit by the holder for value before maturity. (*Sinkler* v. *Siljan, supra*; *Popp* v. *Exchange Bank, supra.*) We therefore conclude that defendant's point is without merit.

[9] Just prior to the conclusion of the evidence the trial court refused the offer of defendant to prove the alleged infirmities of said instruments. We are of the opinion that such refusal was not error. The offer of defendant was made after he had failed to overcome plaintiff's evidence establishing the fact that plaintiff purchased said instruments before maturity, in good faith, and for value, and without notice of any infirmity therein, and also after defendant announced that he had no further evidence to offer on that issue. The course adopted by the trial court in excluding the proffered evidence is therefore sustained by the cases of *Blockman Commercial Savings Bank* v. *Moretti, supra,* and *Lynch* v. *Holbrook,* 49 Cal. App. 380 [193 Pac. 505], wherein it is held in effect that in an action by an assignee of a negotiable instrument against the maker thereof, evidence that the instrument sued upon was with-

out consideration and obtained by fraud of the assignor becomes immaterial in the absence of sufficient evidence tending to show that plaintiff was not a *bona fide* transferee before maturity for value and without notice of the alleged equities of the maker. Indeed, at the commencement of the trial counsel for defendant admitted that such was the rule, having stated in substance that if the trial court should hold that Goodale was a holder in good faith and for value, then the question of failure of consideration would become immaterial.

[10] The trial of the action took place in October, 1923, and no evidence was offered to show that the six months note given by plaintiff in March, 1920, in payment of the purchase price of said instruments or any portion thereof had been paid. Section 3135 of the Civil Code provides: "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him." Defendant contends that in the absence of evidence showing payment in full or in part of the note representing the purchase price of said instruments, or any direct evidence to the effect that the Hellman estate accepted said note in payment of such purchase price, plaintiff is not entitled under the provisions of the code section quoted to recover, upon the instruments thus purchased. We are unable to sustain this contention. It is the rule that "the taking of a note for a pre-existing debt is not payment, unless it is distinctly understood that the note is taken as such. The note only postpones the payment of the old debt until default is made in payment of the note" (*Western Fuel and Coal Co.* v. *S. G. Leewald Co.*, 190 Cal. 25 [210 Pac. 419]); but in this case there was no pre-existing debt; the note itself constituted the original debt and liability thereon attached at once. It would follow, therefore, that at the time of the delivery of said note the purchase price for said instruments was paid in full.

The judgment is affirmed.

Rehearing denied.