[Civ. No. 3587. Third Appellate District.—December 15, 1928.]

L. R. PUGH, Respondent, v. JOHN B. DAWSON, Appellant.

Edward Winterer for Appellant.

Robert J. Gardner and Bordwell, Mathews & Wadsworth for Respondent.

HART, J.—The brief of counsel for the plaintiff contains a correct general statement of the facts of the case and the proceedings at the trial culminating in the rendition of judgment for the plaintiff and we herein adopt said statement, which is as follows:

"The basis of this action is a promissory note for the sum of $2,000.00, made by the defendant, the appellant herein, in favor of R. B. Coleman, dated January 10th, 1924, and due one year after date. The plaintiff, the respondent herein, claims to have acquired the note in due course, before maturity, for a valuable consideration, and without notice of any infirmity in or defense to it. The defendant seeks to escape his liability on the note on the ground that it was obtained fraudulently and without consideration, and maintains that the note is not negotiable in form and that the plaintiff did not acquire it in good faith, before maturity, and for value. The execution and nonpayment of the note

are admitted by the defendant's answer, and upon the trial, under examination by plaintiff's counsel, the defendant admitted the execution and nonpayment of the note.

"Plaintiff, as a witness on his own behalf, testified that he acquired the note from O. J. Wigdal prior to its maturity; that he was the owner of it and that it had not been paid. The note was introduced in evidence and the plaintiff then rested.

"The plaintiff was then called by the defendant for examination under a provision of section 2055 of the Code of Civil Procedure in an effort to prove that he did not acquire the note prior to maturity for value and without notice. After an extended examination of the plaintiff, counsel for the defendant stated that he had no further testimony to offer on the question as to whether or not the plaintiff acquired the note prior to maturity, in due course and for value, and offered to introduce testimony to the effect that the defendant received no consideration for the execution of the note and that he was induced to execute it by fraud. The court then ruled that the note involved is a negotiable instrument and that the plaintiff is a *bona fide* holder thereof. Counsel for plaintiff thereupon moved the court for judgment in favor of the plaintiff as prayed for in the complaint, which motion was granted."

The note declared upon is in the following language:

"$2000.00 Los Angeles, California, Jan. 10, 1924.

"One Year after date, for value received, I promise to pay to R. B. Coleman or order, at Bank of America, in the City of Los Angeles, Two Thousand Dollars, with interest, payable at the rate of no per cent. per annum from date until paid, and attorney's fees of ten per cent. on the amount then unpaid, if placed in the hands of an attorney for collection, or if suit be commenced, or other proceeding be taken to enforce the payment of this note. Should the interest not be paid when due, then both principal and interest shall become immediately due and payable at the option of the holder of this note.

"Should the interest not be paid when due, it shall be compounded monthly thereafter, and bear the same rate of interest as the principal. Principal and interest payable in Gold Coin of the United States of America of the present standard. The makers, sureties, guarantors and endorsers

of this note hereby consent to extensions of time at or after the maturity hereof, and hereby waive diligence, protest, demand and notice of every kind.

"Should this note be signed by more than one person, firm or corporation, all of the obligations herein contained shall be considered joint and several obligations of each signer hereof.

"JOHN B. DAWSON."

The note was indorsed as follows:

"'Pay to the order of O. J. Wigdal, without recourse.

"R. B. COLEMAN.

"Pay to the order of L. R. Pugh, without recourse.

"O. J. WIGDAL."

■ The appellant contends that the note is a non-negotiable instrument for two reasons: 1. Because of the following provision contained therein: "The makers, sureties, guarantors and indorsers of this note hereby consent to extensions of time *at or after the maturity hereof*." (Italics ours.) 2. Because it contains a provision for attorney's fees in case the note was turned over to an attorney for collection by suit or otherwise. The specific contention as to the proposition first stated is that the agreement obliging the maker or indorsers or others who might become obligors in some form or another on the note to consent to the postponement of the payment of the obligation to some future time or times after its maturity renders the time of payment uncertain and undeterminable, and the instrument, therefore, non-negotiable. (Civ. Code, secs. 3055 and 3265.)

We cannot acquiesce in that contention. The note, it will be perceived, definitely fixes the date on which it was to mature and become payable, to wit: One year after the date of its execution, which was January 10, 1924. The provision does not require the holder or any other person who has by indorsement become the payee to consent to or agree to any extension of the time fixed in the note for its payment, nor, in fact, does it give or purport to vest in the makers, sureties, guarantors, or indorsers any right or authority to postpone or to compel postponement of the date definitely fixed in the instrument for its payment. Obviously, the purpose and the only purpose of the provision was to permit the holder and subsequent indorsees of the note to extend the time of payment, at or after maturity,

without releasing the maker or any persons who may have indorsed the instrument prior to its maturity of the liability which has attached to them as indorsers. The question, however, is not new, although California cases in point have not been cited. In *National Bank of Com.* v. *Kenney*, 98 Tex. 293 [83 S. W. 368, 371], the action was to enforce a chattel mortgage given to secure a promissory note which named a certain time for its payment, but which contained a provision similar to the one in question. Holding against the contention that the effect of said provision was to render the note a non-negotiable instrument, the court, among other things, said:

"It does not say that either the holder or the maker may extend the note. It merely makes a provision in case the time of payment may be extended. How extended? It seems to us the extension meant is that which takes place when the debtor and creditor make an agreement upon a valuable consideration for the payment of the debt on some day subsequent to that previously stipulated. The obvious purpose of the provision, taken as a whole, was merely to relieve the holder of the paper from the burdens made necessary by the rigid requirements of the mercantile law in order to secure the continued liability of the indorsers and sureties upon the paper. Therefore what was meant by the stipulation as to the extension of time was simply that, in case the holder and the maker should agree upon an extension, the sureties and indorsers should not be discharged. The holder and maker of any note may at any time agree upon an extension; therefore the fact that they may have that right does not affect the negotiability of the paper. . . . The maker of such a note has the right to pay before the day named, but the holder cannot demand payment before that day."

In *First Nat. Bank of Pomeroy* v. *Buttery*, 17 N. D. 326 [17 Ann. Cas. 52, 16 L. R. A. (N. S.) 878, 116 N. W. 341], the note sued on was, by its terms, made payable "on or before the 1st day of October, 1903," but contained the following stipulation, which, it will be noted, was substantially the same as the one contained in the note in suit: "The makers and indorsers herein, severally waive presentment of payment and notice of protest, and consent that the time of payment may be extended without notice." The court, in that case, answering the contention that said stipulation

oɪ provision removed the note from the negotiability class of instruments of that character, said, *inter alia:*

"We are of the opinion that the provision does not extend the time of payment indefinitely or render it uncertain. The time of payment is already fixed. . . .

"To us it is clear that it has the same effect as though the note read 'on the 1st day of October, 1903, or thereafter, on demand,' in which case there would be no question of its negotiability. Holders of notes do not by a secret mental process make an extension of time of payment, but such extension, if made at all, is made by an agreement between the principal debtor and the holder of the paper, either with or without the consent of the indorsers. This provision seems to us to have been inserted to protect the holder against any release of indorsers or others, by an extension without their assent, and the word 'makers' is evidently included to prevent any misunderstanding or misconstruction of the contract or failure to distinguish between makers, indorsers, sureties, and any other parties who might be or become liable thereon under certain contingencies as makers. (7 Cyc. 614.) This phrase does not express an agreement to extend time, but leaves the matter of extension optional with the holder, and not obligatory upon him, and the note on its face fixes the time when it becomes due." (See, also, *City Nat. Bank* v. *Commission Co.,* 93 Mo. App. 123, dealing with a like provision in the note here sued on, and in which it was held that such a provision in a promissory note, which fixes a definite or certain time for its payment, does not make the instrument non-negotiable.)

Here it may be stated that at the time the North Dakota case from which the foregoing excerpt is taken was decided, the Uniform Negotiable Instruments Law was in force in that state.

We are, as we intimated above, in accord with the reasoning and the conclusion following therefrom in the above cases. Counsel for the defendant cites a number of cases upon the claim that the provision in question imparted to the note herein declared upon the character of non-negotiability. But an examination of some of the cases so cited has disclosed a clear line of distinction between them and the case at bar in the respect now being considered. One of the cases so mentioned by counsel is *Cedar Rapids Nat. Bank* v. *Weber,* 180 Iowa, 966 [L. R. A. 1918A, 432, 164 N. W. 233].

The note sued on in that case contained the following provision: "*All* parties to this note, including sureties, indorsers and guarantors, hereby severally waive presentment for payment, notice of nonpayment and protest, and consent to extensions of time on this note." The court, with unquestioned legal propriety, held that the payee or holder of the note came within the purview of the terms of said provision. That case is peculiarly interesting in that it exhaustively reviews many cases involving discussions of the precise question now in hand. Some of the cases so reviewed involved promissory notes containing provisions substantially in the language of the one in question, while others involved like instruments in which the stipulation for the extension of the time for the payment of the note beyond the date of its maturity as specifically fixed therein was broader in scope or legal effect, in that they included, with the indorsers, sureties, and guarantors, the payee or holder of the instrument. In all the cases cited in said case the decision was planted upon the solution of the question whether the stipulation for the postponement of payment of the note beyond the date of its maturity as fixed by the instrument itself either expressly or under a rational interpretation of its language included, with the indorsers, sureties, and guarantors, the payee or holder of the note. In all those cases where it appeared or it was concluded that the indorsers or sureties or the guarantors were alone bound by the extension clause, it was held that the date of payment of the note was not uncertain and that it was, therefore, negotiable in form and character. If, on the other hand, the payee or holder was found also to be a party to the extension agreement, then, obviously, the note was not negotiable in form and character.

In *Glidden* v. *Henry,* 104 Ind. 278 [54 Am. Rep. 316, 1 N. E. 369] (cited by the defendant here), the note upon which recovery was sought provided that "the payee, or his assigns, may extend the time of payment thereof from time to time indefinitely, as he or they may see fit, and receive interest in advance, or otherwise, from the maker or endorsers, for any extension or forbearance so made." The court in that case held that, notwithstanding that the note contained a promise to pay in twelve months, the provision as to the postponement of the date of its payment to an indefinite time made the time of payment uncertain and hence rendered the instrument non-negotiable.

The other cases to which attention is called by the defendant are as readily to be distinguished from the instant case as are the above cases likewise cited. We need not specially review them herein.

The contention that the provision in the note in suit for the payment of the fees of an attorney of "ten per cent on the amount then unpaid, if placed in the hands of an attorney for collection" or if suit be commenced for enforcing the payment thereof, renders the note non-negotiable, is devoid of merit. Section 3082 of the Civil Code, after providing that an instrument to be negotiable must be in writing and signed by the maker or drawer, declares that, among other ingredients, it must contain an unconditional promise or order to pay a sum certain in money, and must be payable on demand, or at a fixed or determinable future time. Section 3083 provides that "the sum payable is a sum certain within the meaning of this act, although it is to be paid— . . . (5) With costs of collection or an attorney's fee, in case payment shall not be made at maturity." This provision of the Civil Code itself answers the point. But it may be added that subdivision (5) of section 3083 has been considered by the reviewing courts, and it has been he!l that a provision in a promissory note for attorney's fee for the collection or the enforcement by legal proceedings of the payment thereof after dishonor or a default in payment at maturity, as authorized by said provision, does not destroy the negotiability of the note, notwithstanding that such a provision involves a contingent agreement. (See 19 Cal. Jur., sec. 15, p. 810; *Glen* v. *Rice*, 174 Cal. 269, 274 [162 Pac. 1020]; *Eastman* v. *Sunset Park Land Co.*, 35 Cal. App. 628 [170 Pac. 642]; *Fox* v. *Crane*, 43 Cal. App. 559 [185 Pac. 415]; see, also, in the footnotes under subd. (5) of sec. 3083, in Kerr's Civil Code of the Cyclopedic Code series, cases cited from other state jurisdictions and decided after the adoption in said states, respectively, of the Uniform Negotiable Instruments Law.)

It is next urged that the note is uncertain because it is uncertain whether, under its terms, interest is to be paid thereon from and after the date of its maturity until paid. It is clearly certain and, in truth, not disputed, that the instrument does not provide for or contemplate that the note should bear interest before the date of its maturity. The trial court, however, construed the language of the

stipulation in the note relative to interest to mean that the instrument was to bear interest from and after the date of its maturity until paid, and so concluded as a matter of law. We think it quite clear that the trial court's construction of the instrument in that particular is incorrect. It seems plain to us that a careful reading or fair consideration of the language of the note regarding interest must lead to the conclusion that it was not intended by the original parties to the instrument that it should bear interest either before or after the date of its maturity. It was expressly stated by the attorney for the plaintiff in his brief and not denied by defendant's counsel in either of his briefs that the note was written in or prepared by the use of a printed form of promissory note, "with blank spaces to be supplied in writing," according to the terms to be embraced therein; that in the blank space for the insertion of the rate of interest, if interest was to be charged, the word "no," written with pen and in ink, was inserted. As so prepared, the note, it will be perceived, reads: " . . . with interest payable at the rate of *no* per cent *until paid*." It will also be noted that the same paragraph of the instrument contains this provision: "Should the interest not be paid *when due*, then both principal and interest shall become immediately due and payable at the option of the holder of this note." The second paragraph, it is to be observed, contains the following provision: "Should the interest not be paid *when due*, it shall be compounded monthly thereafter, and bear the same rate of interest as the principal. Principal and interest payable in gold coin of the United States of America of the present standard." These several provisions of the note, say counsel, were intended to provide for interest from and after the maturity of the note, if it was not paid at maturity. Those provisions do not say so in terms, and if that meaning is to be given them, it must be by construction and in plain opposition to virtually an express stipulation in the instrument that no interest is to be charged either before or after the maturity of the note. We have been and are unable to conceive a sound reason for holding that the parties meant or intended that any other effect should be imparted to the note as to interest than that of the express provision that the instrument should bear "no interest until paid," plainly meaning, we think, that no interest was to be charged whether the note was paid at the date of its maturity or at

some time thereafter. The provision that, "should the interest not be paid *when due,* then both principal and interest shall become immediately due and payable at the option of the holder of this note," is meaningless, in so far as is concerned the period of time intervening between the date of the execution and delivery and the date of the maturity of the note, for, as seen, no interest was to be charged for that period. And it would equally be meaningless after the date that it became due and payable, since, under what we conceive to be its intended meaning, the note provides that it was not to bear interest whether paid at the time of or subsequent to the date of its maturity. What we here say concerning the said provision of the note is true of the stipulation as to the compounding of interest in the second paragraph of the note as it is hereinabove quoted. That stipulation is as meaningless as the first considered. It is probable that those provisions were parts of the printed matter in the blank printed form used for writing the note on and were by inadvertence caused to remain therein. This statement is to some extent fortified by the consideration that the word "no" inserted in the blank space reserved for the specification of the rate of interest, where the note was to bear interest, was written with pen and ink, which is indicative of a deliberate purpose to charge no interest, and from this it would seem probable that if it was the understanding by and between the original parties to the note that it was to draw interest from and after the date of its maturity, if not then paid, the parties would have caused to be likewise written in the instrument, in language too plain to be misunderstood, a provision to that effect. This would be the course naturally adopted and followed by men of long experience in business activities in all their multifarious forms, as the evidence here shows that the parties to the transactions involved herein were and are.

■ There is no merit in the contention that it was not shown that the note was transferred to the plaintiff, or that he was not a holder of the note in due course or without knowledge of any legal infirmity which might have grown out of the transaction leading to and attending its execution and delivery. The note, of which a copy is hereinabove set forth, was made and is payable to order, as will be perceived. It will further be noted that it bears the indorsement of Wigdal, indorsee of the payee, to the plaintiff.

This was, of course, a sufficient indorsement. (Civ. Code, sec. 3112.) The answer admits that the note was executed by the defendant, and the latter testified that the signature to the note was his. The note was offered by plaintiff and received in evidence.

"Possession of commercial paper, with indorsement, makes a *prima facie* case of delivery by the indorser to the holder and of ownership of the latter. In *Pastene* v. *Pardini*, 135 Cal. 431 [67 Pac. 681], the court said: 'The delivery was *prima facie* established by plaintiff's production and proffer of the note.' (See note to *Bedell* v. *Herring*, 77 Cal. 572 [11 Am. St. Rep. 323, 20 Pac. 129], where the cases are collected.) The proposition there laid down and supported by numerous cases is thus stated: 'It is well established that the mere possession of a negotiable instrument by the indorsee, or by the transferee where no indorsement is necessary, imports *prima facie* that he is the lawful owner, and that he has acquired it before maturity, *bona fide,* for value, in the usual course of business, and without any circumstances impeaching its validity.' " (*Linder Hdw. Co.* v. *Pacific Sugar Corp.*, 17 Cal. App. 81, 92 [118 Pac. 785]; see, also, Civ. Code, secs. 3099 and 3111; *Hall* v. *Thurston*, 176 Cal. 738 [171 Pac. 285]; Story on Promissory Notes, sec. 196; *Braly* v. *Henry*, 71 Cal. 481, 482, 483 [60 Am. Rep. 543, 11 Pac. 385, 12 Pac. 623].)

Besides the *prima facie* showing of the plaintiff's ownership of the note the latter testified that he purchased the note from Wigdal, an indorsee, paying $1,600 therefor.

The answer sets up fraudulent representations as the means whereby Coleman, the payee, procured the execution and the delivery of the note by the defendant to him (Coleman), and alleges that the plaintiff, prior to and at the time he took the note from Wigdal, had full knowledge of such fraud or false representations, and, further, had knowledge at said time of the asserted fact that the defendant repudiated and rescinded said note. There is no evidence that Wigdal was not a holder and owner of the note or that he did not acquire it in due course and for value. There is no evidence that either Wigdal or the plaintiff had any knowledge of any legal infirmity in the instrument or of any claim of any such infirmity at the times, respectively, that each acquired the note, Wigdal from the payee Coleman, and the plaintiff from Wigdal. If there was in point of fact fraud at the

bottom of the transaction culminating in the execution and the delivery of the note to Coleman, there is absolutely no evidence that either Wigdal or the plaintiff was a party to such fraud or knew anything of it when each in turn became the owner thereof or at any subsequent time.

"It is a rule of the law merchant and it is provided by the code in adopting the uniform law that 'a holder who derives his title through a holder in due course, and who is himself not a party to any fraud or illegality affecting the instrument, has all of the rights of such former holder in respect to all parties prior to the latter.' " (19 Cal. Jur., p. 860, sec. 53; Civ. Code, sec. 3139.)

■ The point next discussed is that the plaintiff did not give a valuable consideration for the note. The evidence shows that the plaintiff gave Wigdal for the note $100 in money and a promissory note, secured by a mortgage on certain real property, for $1,500. This note and mortgage were executed by one Lottie Ahlstrom in favor of Wigdal and delivered by the plaintiff to said Wigdal, the indorser of the note in suit to plaintiff, on the sixth day of January, 1925, which was the date of said (Ahlstrom) note and mortgage. An effort was made by the plaintiff's counsel to obtain an explanation from both Miss Ahlstrom and the plaintiff of the connection the latter had with that transaction, but the trial court sustained objections of counsel for defendant to questions directed to the disclosure of the latter's relation thereto. The plaintiff, however, did testify that he had possession of the note and mortgage, that he did deliver them to Wigdal as in part payment for the note in suit, and that he, at some time after purchasing the note sued on, paid the Ahlstrom note to Wigdal. There was no other testimony on that question received. In that state of the record as to the Ahlstrom transaction it cannot be said that the plaintiff was under no obligation to pay and satisfy the said note and the mortgage to secure its payment, or repay Miss Ahlstrom if she had been compelled to pay and discharge that obligation. As counsel for the plaintiff in their brief well say: "There being no evidence to the contrary, the presumption that the Ahlstrom note and mortgage were given for a valuable consideration must prevail (Civ. Code, sec. 1614), and they having been in the possession of the plaintiff, and he having exercised acts of ownership over them, the presumption that he was the owner of them

must prevail," there being no evidence to the contrary (Code Civ. Proc., sec. 1963, subds. 11 and 12), "and this irrespective of the question of his ownership of the property mortgaged." If, as is thus to be presumed, the plaintiff was under legal obligation to pay the Ahlstrom note, he certainly could not be a mere volunteer in the payment of said note, as counsel for the defendant contends.

The defendant's counsel makes a large number of points upon the question of the good faith of the transfer of the note in suit by Wigdal to the plaintiff. We will not attempt herein to follow the ramifications of his argument in that regard and notice specially all of the many points so made. The argument, if sustained, would require us to declare, as a matter of law, that the testimony of the plaintiff is untrue and entitled to no weight or credit. This we cannot do. While there were developed in his examination by defendant's counsel a few circumstances in connection with the transaction eventuating in the acquisition of the note by him which, unexplained, might justify suspicion that said transaction was not *bona fide* either on the part of the plaintiff or his indorser Wigdal, yet there was an explanation by the plaintiff of the circumstances referred to, and whether it was or was not satisfactory was a question for the trial court to determine. We have heretofore in effect declared that the findings upon all the vital issues herein derive sufficient support from the evidence. The findings are to the effect that, before and at the time of purchasing the note in suit and so securing its transfer to him, the plaintiff had no knowledge that the transaction in which the execution and the delivery of the note by the defendant to Coleman, the payee, was characterized by fraud or malversation of any character on the part of Coleman, if such was the fact. And the findings further show that the plaintiff, after purchasing the note in suit and before paying the Ahlstrom note, received and had no notice of any infirmity in the instrument or any defect in the title of Wigdal or any other person previously owning the same. Hence, as counsel for plaintiff contend, the attempt of counsel for the defendant to invoke the application herein of section 3135 of the Civil Code, as amended in 1917, is abortive. That section provides: "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the

person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him.''

It is claimed by counsel for the plaintiff that that section ''has no application whatever in any case where (as they claim is true here) the assignee has given the full consideration agreed to be given for a negotiable instrument,'' or where, as here, the transferee gives as the consideration for the transfer of the note the note of a third party to the transferor and which the transferee promises to pay or assumes the obligation to pay. As to instances where the section has application, counsel for plaintiff cite the case of *Griswold* v. *Morrison,* 53 Cal. App. 93 [200 Pac. 62]. It is not necessary, however, that we should pause to inquire whether the postulate of counsel's proposition here is or is not sound, for it is obvious that the section is not applicable here, since, as above pointed out, the record shows that the trial court found upon sufficient evidence that the transferee had no notice, before paying the note given as a consideration for the transfer of the note in suit to him, that the latter note was procured from the defendant by means of fraud or fraudulent representation by the payee therein named.

The next assignment of alleged error to be considered needs but brief consideration herein. It involves an attack upon the ruling of the court refusing to allow the defendant to introduce proof in substantiation of the allegations of the answer·that the defendant was induced by the original payee of the note to execute and deliver the same to the latter through fraudulent representations. As is above shown, the offer of such proof was made after both the plaintiff and the defendant had submitted the case for decision practically upon the testimony alone of the plaintiff as it was brought into the record through an extended and exhaustive examination of plaintiff by defendant's counsel under section 2055 of the Code of Civil Procedure, and after the court had decided in favor of the plaintiff the question of the negotiability of the note and the question whether the latter acquired the instrument in due course and without notice of any infirmity in the instrument. The ruling complained of was obviously sound. After the decision that the

note was a negotiable instrument and that the plaintiff purchased and received it from Wigdal, the indorsee of the original payee, in due course and without notice of any infirmity in the instrument, or notice of the defendant's equities, if any he had, any testimony tending to prove fraud in the procurement of the note from the defendant by Coleman would be wholly immaterial or to no purpose. Upon this question, the case of *Goodale* v. *Thorn,* 199 Cal. 307, 312, 313 [249 Pac. 11], which was an action to recover on certain assigned trade acceptances, presents a situation substantially, if not precisely, the same as the one with which we are here confronted, and settles the question here against the position of the defendant. But the defendant had an opportunity to present all the testimony available to him to support his defense of fraud, but his attorney, it seems, was perfectly willing to submit the issue of fraud upon the testimony he brought out through the examination of the plaintiff under section 2055 of the Code of Civil Procedure. He, in fact, insisted upon a decision upon the testimony of plaintiff of the question of good faith of the latter in the acquisition of ownership of the note. That question having been determined against his position, it is, indeed, strange that he should now insist that his offer to prove fraud involves a legally sound proposition. It may be suggested that had he there and then applied to the court, upon a proper showing, for an order reopening the case for the purpose of enabling him to introduce further evidence in support of his special plea in bar, refusal by the court to grant such application might present here a question of abuse of discretion on the part of the court.

There are certain other rulings on questions of the legal propriety of the examination in certain particulars of plaintiff by defendant's counsel under section 2055 of the Code of Civil Procedure which are assigned as erroneous and prejudicial. These rulings were upon objections by plaintiff to certain questions propounded by counsel for the defendant to the plaintiff and which the court sustained. The assignments need not be specially noticed herein. The whole examination of plaintiff by the defendant's counsel was to show, if thus it could be done, that he took the note in suit with notice of its alleged invalidity, and counsel exhaustively went into that question in such examination, covering, as to most of the instances in which the rulings now

referred to were made, the points which the interdicted questions were particularly designed to develop. The defendant was not prejudiced by said rulings. But we are not to be understood as holding that all the rulings now referred to were incorrect. Some of them, indeed, were technically proper, the objections thereto being addressed to the form rather than the relevancy and materiality of the testimony which it was their evident purpose to bring out.

 Counsel for defendant asserts that, ''notwithstanding the fact that there is no evidence at all in the record on the matter of fraud, the court erroneously in its findings found that the allegations in defendant's answer as to said fraud are untrue''; that ''there is absolutely no evidence at all to support such findings.'' As seen, the issue of fraud was introduced into the case by the defendant's answer in the form of a plea of confession and avoidance, and, as repeatedly stated herein, the defendant, as in support of that plea or issue, called the plaintiff to the witness-stand under section 2055 of the Code of Civil Procedure and examined him at great length regarding the circumstances under which he took the note, the obvious object of such examination being to show by the plaintiff himself, if he could, that plaintiff took the note with notice of the asserted invalidity of the instrument by reason of fraud practiced upon the defendant by the original payee in the procurement by said payee of the note. Upon that testimony counsel for the defendant submitted the issue of fraud to the court for determination and decision. Evidently counsel believed, when so submitting that issue, that through his examination of the plaintiff he had brought forth facts and circumstances sufficient in probative force to warrant a finding that the note was the offspring of the fraud or false representations of the original payee, and that the plaintiff took the note with knowledge or notice of such fraud. In his brief filed here it is clearly shown that he still believes that the testimony of plaintiff as he (counsel) brought it out fully supports the allegations of the answer on the issue of fraud. Indeed, as shown, he insists here that this court can so hold as a matter of law. But however this all may be, the fact that the defendant attempted to prove the issue of fraud as set up in his answer, even though he failed in the attempt, necessarily required that the court should dispose of that issue in its decision. ''Under the system of express findings

now provided for (Code Civ. Proc., secs. 632 and 633), full findings, unless waived, are required on all material issues raised by the pleadings and evidence. And this is true, even though no evidence has been introduced in support of an issue, or the evidence is insufficient to sustain the issue, for in such cases the findings of fact should be against the party who has the burden of proof thereon.'' (24 Cal. Jur., p. 935 et seq., sec. 183; see, also, 2 Hayne on New Trial, rev. ed., sec. 240, p. 1319; *Taylor* v. *Taylor*, 192 Cal. 71, 81 [51 A. L. R. 1074, 218 Pac. 756]; 24 Cal. Jur., sec. 182, p. 935.) ▉▉ It is true that where there is no evidence whatever upon a material issue made by the pleadings, omission to make a finding upon such issue will be held not to be sufficient to justify a reversal. But if findings are, nevertheless, made in the latter case, as counsel claims is true here, such findings will not have the effect of vitiating the judgment, the other findings being sufficient to support it. This rule is obviously not inconsistent with the rule first above stated with relation to the question in hand.

Our conclusion is, as is apparent from the foregoing discussion, that the findings are well supported by the proofs and that the findings support the judgment, save so much thereof as relates to interest.

In accord with the views above expressed as to the matter of interest on the note in suit, the judgment is hereby modified by striking therefrom the sum of $198, the sum thereby allowed as interest on said note, and, as so modified, the judgment is affirmed, appellant to recover costs.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 14, 1929, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 11, 1929.

All the Justices present concurred.