# CHARLESTON.

ELWOOD T. GREEN *et al v.* WHEELING INDEPENDENT COAL

COMPANY, *A corporation*

(No. 6713)

Submitted September 3, 1930. Decided October 7, 1930.

*Riley & Riley,* for appellant.
*David A. McKee* and *J. M. Ritz,* for appellees.

HATCHER, JUDGE:

W. T. Hughes and others own a tract of 800 acres of coal which they leased to the defendant company. They are sublessees of a tract of 39 acres of coal and sublet to defendant whatever rights they had in the surface thereof. The 39 acres adjoins and is between the 800 acres and the public road. The defendant is using an entry on, and the surface of, the

former, to operate the coal on the latter. The plaintiffs are the owners of the 39 acres and seek in this proceeding to enjoin the defendant's use of the 39 acres for any purpose other than the operation of the coal therein. The circuit court decreed that the coal from the 800 acres could be transported through and over the 39 acres, but enjoined the use of the latter for any other purpose in connection with the operation of coal on the former.

The defendant raises the question of non-joinder of Hughes and his associates and that should, of course, receive our first consideration. This question entails a brief history of the Green lease. The "coalbank" and the coal on the 39 acres were leased by James E. Green, the father of plaintiffs, in 1907, to W. J. Dieringer, for a period of 20 years; and by supplemental contracts made in 1909, the term was extended to 1947 and the right was granted Dieringer to transport coal from other lands then owned or afterwards acquired by him or his assigns, through an entry then driven in the 39 acres. (By recital it is shown that this right was meant to extend to the public road.) Dieringer assigned his rights in the Green coal to the Edgewood Coal Company, a corporation, in 1910. The existing entry was found to be impractical either for mining the coal remaining on the Green tract or that of the 800 acres, according to the undisputed evidence of Hughes who was president of the Edgewood Coal Company, and another entry was commenced in 1911 at a place agreed upon by him and James E. Green. (Record 271 and 274.) The new entry was completed through the 39 acres to the 800 acres about 1916, since when no coal has been mined on the Green tract. Hughes and associates purchased the property of the Edgewood Coal Company in 1915, and operated the coal through lessees until 1926, when they executed the lease to the defendant, for a period of six years. From 1916 to 1926 the former lessees under Hughes and associates transported the coal from the 800 acres through the second entry on the 39 acres to a tipple thereon, and thence across the 39 acres to the public road. They also used the 39 acres *generally,* so far as was necessary to produce coal from the larger tract. Since 1926 the defendant has continued this general use. A

448

substantial sum has been expended by Hughes and associates in preparing the surface for that use.

Hughes is the agent of himself and associates to receive and divide the royalty from defendant, after paying taxes and other necessary expenses. (Record 123.) He is not empowered, however, to represent his associates in litigation. If so, their non-joinder would not seem of such importance, as he presented fully their claims (as well as those of defendant) to the use of the 39 acres, while a witness for defendant. The owner of the largest undivided interest in the 800 acres, B. E. Warne (9/24) also testified for defendant. While on the witness stand he was questioned specifically by the trial court as to his desire to become a party to this proceeding, and replied: "I guess I won't try to get into it." (Record 126.) When one actually assists in the defense of a cause or with full notice declines such an opportunity to become a party as Mr. Warne had, it would seem that equity should require a special showing of prejudice before setting aside a final decree because he was not a nominal party. See generally 34 C. J., p. 1019, sec. 1443. But undivided interests in the property in question amounting to 10/24 are owned by other persons who were not before the court in any way, among whom are two infants.

A determination of the issue here involves a construction of the contracts (affecting the 39 acres) under which Hughes and associates hold. If the rights they claim and have been exercising (through their lessees) for ten years prior to litigation be now inhibited, an expenditure of a large sum of money (estimated at $30,000.00 or more) must be made in order to mine the coal on the 800 acres. The defendant would not be justified in making the expenditure, because of the short time remaining in its lease, and its operation would cease. These rights are therefore not mere incidents to the tenancy of the defendant, but go to the very life of the lease. They are so material to Hughes and his associates that it would be eminently unfair to them if, upon the reversion of defendant's lease, these rights had been prejudged as to them. It is well settled in such case that the owners of the reversion should be made parties to the litigation. Daniels Ch. Prac.

(8th Ed.), Vol. 1, page 163; *Maynard et al.* v. *Shein*, 83 W. Va. 508.

The defendant brought the non-joinder of Hughes and associates to the attention of the trial court by plea in abatement, to which a demurrer was sustained, and then again by motion upon the final hearing, which was overruled. It is not necessary to discuss the sufficiency of the plea, as the need of having them before the court fully appears from the evidence. It is therefore our duty to direct that they be impleaded and to reverse the decree of the lower court for that purpose. *Talbott* v. *Curtis*, 65 W. Va. 132. Because of the absence of necessary parties, we express no views on the other points of error raised. *Hayhurst* v. *Hayhurst*, 71 W. Va. 735. We deem it not improper, however, to call attention to the case of *Chafin* v. *The Gay Coal & Coke Company* (decided coincidently with this one) as our latest pronouncement on the use of easements.

The decree of the lower court is reversed and the cause remanded.

*Reversed and remanded.*