Day Cook *et al. v.* W. G. MacCorkle

(No. 7399)

Submitted January 17, 1933.   Decided April 4, 1933.

(Rehearing denied June 8, 1933)

*T. S. Clark,* and *Connor Hall,* for appellant.
*James Damron* and *Philip Angel,* for appellees.

HATCHER, JUDGE:

In this suit a lease of land for oil and gas, executed by the plaintiffs to the defendant, was declared forfeited, and he appealed.

The lease, dated April 2, 1928, acknowledged a cash consideration of $350.00 and stipulated as follows: "It is agreed that this lease shall remain in force for the term of one year from this date and as long thereafter as oil and gas, or either of them, is produced from said land by the Lessee, but upon the terms hereinafter contained. * * * If a producing well be completed before the end of said term, the Lessee covenants and agrees to thereafter and within two years from the end of said term, drill all such wells on said premises as are necessary to fully develop the same as producing territory, provided that said Lessee shall whenever necessary after the date of this lease drill all such off-set wells as are necessary to protect such premises."

The one-year term above was extended ninety days by mutual agreement, and in June, 1929, (within the extension) the defendant completed a well at a cost of $14,000.00, which had a flow of some 350,000 cubic feet of gas. Because of low pressure at the well and declining business conditions, the two-year period above elapsed without the defendant finding a customer for the gas or drilling other wells.

This suit was brought July 24, 1931, and the bill prayed for a cancellation of the lease on the charges that the defendant had failed to develop the lease according to his covenant, and had abandoned the lease.

It appears both from the answer and the proof that shortly after the well was completed, the defendant assigned the lease to Torquil Gas Company, (a corporation in which he was largely interested), and that on January 13, 1932, (pending this litigation) the assignee entered into a contract for the sale of the gas with West Virginia Gas Corporation. Plaintiffs show that the Torquil Company was dissolved by a decree of the circuit court of Kanawha County, entered May 12, 1931, for non-payment of license tax to the State. (Nothing further than mere dissolution is shown). Nevertheless, that corporation is entitled to protect its assets, one of which is the lease in question. Despite its dissolution, "It continued to exist as a matter of fact, after its franchise or legal right had expired. It thus became a corporation *de facto* but not *de jure*, * * * the courts cannot reasonably ignore the existence of such a corporation if it is an immutable fact." *Miller* v. *Coal Co.*, 31 W. Va. 836, 840, 8 S. E. 600, 602. The Torquil Company was not made a party to the suit, and the omission calls for a reversal without adjudicating the merits of the controversy. *Talbott* v. *Curtis*, 65 W. Va. 132, 63 S. E. 877; *Hayhurst* v. *Hayhurst*, 71 W. Va. 735, 77 S. E. 361; *Green* v. *Coal Co.*, 109 W. Va. 446, 449, 155 S. E. 315.

In order to save the parties the costs of another appeal, if possible, we submit some observations. This suit is in a court of equity, which does not take kindly to a forfeiture, or a rigid construction of the lease. We appreciate the fact that the plaintiffs' expectations from the lease have not been realized. We are mindful, however, that the lease brought them $350.00 in cash and gas for domestic use, while the defendant has not

received anything yet on the risk of $14,000.00, which he took for the mutual benefit of all parties. Upon the completion of the well which produced gas in marketable quantity, the defendant acquired a vested interest in the well, abandonment of which is not indicated—as plaintiffs contend—merely by his failure to answer their letters and to visit the well. We recognize the right of the lessors to exact development and the duty of the lessee to develop, within reason. We are not impressed, however, that it was incumbent on defendant to drill more wells during the period he was unable to market the gas from the one he had drilled. If there was no market for the gas, additional wells would not have prevented drainage from adjacent territory which had a market; and his agreement ''to fully develop the same *as producing territory''* is a relative covenant, depending on whether ''operators for oil and gas of ordinary prudence and experience in the same neighborhood and under similar conditions had been proceeding successfully with the further development of their lands or leases; and whether such additional wells would likely have been to the mutual profit of both lessors and lessee.'' *Hays* v. *Bowser*, 110 W. Va. 323, 325, 158 S. E. 169, 170. Further development may be requisite, now that a purchaser of the gas has been found, depending, of course, on future conditions. Since the Torquil Company (as a dissolved corporation) has no right to operate the lease or to continue in business further than to wind up its affairs, its interest in the lease should be disposed of.

The judgment of the circuit court is reversed and the cause remanded with directions to make the Torquil Gas Company a party.

*Reversed and remanded.*